THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v*. THOMAS F. Fox, Defendant-Appellant.

(No. 67-56; )

Third District—November 30, 1970.

Zenon Myszkowski, of Joliet, for appellant.

Winston Block, Assistant State's Attorney, of Joliet, for the People.

Mr. JUSTICE ALLOY delivered the opinion of the court:
Defendant Thomas F. Fox was found guilty of murder in a jury trial

conducted in Will County and was sentenced to a term of 99 to 100 years.

Significant facts in the record indicate that on November 19, 1965, defendant Fox, who was working for a company installing sink tops, stated in a conversation with his employer that if he ever found his wife cheating on him he would kill her. At the end of that day, his supervisor told Fox that he would not be retained on his job. Fox was to meet his wife, Carol, at the home of Mrs. and Mrs. Yates at 8:00 P.M. on November 19 for supper. Carol went home with the Yates about 5:00 P.M. but defendant did not come to the Yates home until about midnight. He brought a bottle of liquor with him to the Yates house but did not appear to have been drinking very much before his arrival. Defendant and his wife ate pizza with the Yates and defendant had three mixed drinks. All appeared to be normal between defendant and his wife at that time. They left the Yates home at about 2:00 A.M. and arrived at their home in Lockport Township about 2:30 A.M.

On the morning of November 20, 1965, a friend stopped to pick up Mrs. Fox for work but there was no answer at the door so she went on without Mrs. Fox. Defendant was observed three times during that day driving up in front of his house but on these occasions he never got out of his car. That same afternoon, two boys, aged 14 and 15, who were playing in the yard of the Fox home noted that Mr. Fox arrived home again at about 3:30 P.M. with a puppy dog, and when the boys asked to use the bathroom in the Fox home, as they were accustomed to do, Fox refused to let them in. Defendant also told the boys that if anything happened to him, the puppy was to go to his daughter, Vicky. Defendant went into the house for about ten minutes and then came out and left.

At about 1:00 A.M. on the morning of the 20th, defendant had taken his two-year old daughter, Vicky, to his mother-in-law's home, and left her, but later returned with the puppy and played with his daughter in the yard. The mother-in-law stated that Fox apeared to be normal. On the same day, Fox visited with some friends and left a card with them for his daughter with $14 in it, although he returned the next morning and took $12 back. He told these friends, "If I had never gotten married, everything would have been all right. I would be a free man". Around 7:45 P.M. of the same evening of November 20, defendant was seen by an Illinois State Trooper walking along the road in Winnetka, Illinois. Defendant was staggering and had slurred speech. A breathalizer test showed that he was not intoxicated nor did he show any evidence of being under the influence of narcotics. At the police station, Fox indicated that he was going to call his wife, but after dialing two digits he hung up. Later that evening, police turned defendant over to his parents. Prior to his release to his parents, defendant was examined by a doctor who concluded that

defendant was suffering from some mental abnormality but he did not feel it was legal insanity.

Following defendant's release by the police at Winnetka (on the evening of November 20), defendant left about noon on November 21 with two friends to drive to Kentucky. On the trip down and back, defendant told one of these friends that he and his wife had an argument during the early morning of November 20 and that he struck his wife and then blacked out. The next thing he remembered was waking up about 7:00 A.M. covered with blood and his wife dead in the bathroom.

While defendant was on the trip to Kentucky, his wife's body was found by the wife's mother and sister who had forced their way into the house to investigate about 7:30 A.M. on November 21. The Will County Coroner indicated that Carol Fox had died between 3:00 and 5:00 A.M. the morning of November 20, 1965, with death having been caused by a stab wound to the heart. There were long slash wounds across her body, across her scalp and neck and about 15 stab wounds in the chest.

Upon defendant's return from Kentucky around midnight on November 22, he was arrested and taken to a police station in Chicago. In the early morning of November 23 he was taken to the Will County Sheriff's office in Joliet. The record shows that no threats or promises were made at that time and the defendant was placed in a cell about 4:30 A.M. and allowed to sleep until 9:00 A.M. At 9:00 A.M. on November 23, defendant was taken to an office where he was told of his constitutional rights and also told that he did not have to say anything and what he did say could be used against him at a trial. Defendant was also advised of his right to have a lawyer present. Defendant stated that he did not want to have a lawyer and that he wished to make a statement. He proceeded to make his statement about 9:15 A.M. on November 23. The statement of the defendant which was read into evidence during the trial, detailed the defendant's activities on the night of November 19 and 20, and stated he was with his wife on the early morning of November 20 and did not remember striking his wife but woke up the next morning with blood all over him and his wife dead in the bathtub. He stated he did not know what caused her death. It was shown in the trial that no threats or promises were made to the defendant nor was there any physical duress of any kind.

At the trial of the cause, a physician who specialized in psychiatry, testified that he had examined defendant and concluded from his examination that defendant was sane when his wife was killed and was also sane at the time of trial. He also stated that he believed defendant had a fear that his wife was attracted to other men and that this fear and despair along with intoxication could have caused defendant to destroy his wife so that no one else could have her. Six lay witnesses testified that they

had known defendant and in their opinion defendant was not abnormal at any time they had seen him.

Dr. Steinhorn, another psychiatrist, testified that he had examined defendant for one and a half hours before trial and then again for 25 minutes before the court convened on the day of his testimony. He stated that defendant was a "borderline case" which he indicated was a combination of being fairly normal at times to times of severe mental disturbance. When questioned as to his opinion regarding defendant's mental state at the time his wife was killed, the doctor stated that defendant could have been suffering from a mental disease at that time which caused defendant to lack the capacity to appreciate the criminality of his conduct. The doctor also stated that defendant had been dismissed from school and was AWOL in the Navy. Dr. Steinhorn also testified that he had received a memorandum, by a former defense counsel for defendant, which said, "Defense of insanity discounted due to chance of lifetime internment at Chester".

The major issue before this Court on appeal revolves around the failure of the trial court to hold a hearing to determine whether the statement made by defendant was voluntary. Defendant was denied a copy of the written statement made by him when the request was made prior to trial. When this request was denied, defendant filed a motion to suppress any statements made by him and set forth facts showing that he was entitled to a hearing on the question of whether such statement was voluntary. The State contended, before the trial court, that the defendant made no "confession", but merely a "statement", and that defendant was not entitled to a hearing on the voluntariness of a "statement". The trial court agreed with the State's contention. The statement was not exhibited to defendant or his counsel before the trial.

During the trial, the State called a deputy sheriff of Will County to identify the written and signed statement made by defendant on November 23, 1965. Defendant was then shown this statement for the first time and was given 15 minutes during the trial to examine it. Defendant then made a motion for a full hearing out of presence of the jury to determine the admissibility of the statement. The State opposed this request stating that it was not a confession but an admission. The court denied the motion for a hearing outside the presence of the jury. The court thereafter permitted testimony as to the statement. All of the testimony showed that defendant was specifically informed of his right to remain silent and that anything he said could be used against him. Defendant was also told that he could have an attorney present if he wished to. Defendant stated he did not want an attorney present. Witnesses all indicated that no promises were made to the defendant and that there were no threats or force used on defendant. The statement was then read into evidence at the trial in

question and answer form. This statement was objected to by the defendant.
■■ Under the decisions in this State, there is no distinction made between a confession and a statement. In *People v. Lefler*, 38 Ill.2d 216, the State attempted to introduce two oral and one written statements by the defendant in that case. Defendant requested a hearing outside the presence of the jury on the question of whether such statements were given voluntarily. The court denied the request on the ground that the statements were at most "admissions" rather than "confessions". The Supreme Court stated as to this contention ( at Page 220):

"While the statements of the defendant were not in the strict sense of the word confessions to the crime of murder, it is apparent that they were not entirely exculpatory and that his admissions that he squeezed the child to keep her from crying were incriminating. The authorities in this State appear to be conflicting on the question of whether a preliminary hearing is required to determine the voluntary nature of an admission, as distinguished from a confession. * * *

In our later decisions * * * we held * * * that the voluntary character of any out-of-court statement must first be established before the statement may be used, even for impeachment purposes."

*People v. Hiller*, 2 Ill.2d 323, also saw no distinction between a statement and a confession, where the statement is incriminating. In *People v. Knox*, 90 Ill.App.2d 149, the court came to the same conclusion and stated that, upon request, the trial court is to allow a hearing to determine whether or not statements were voluntary or involuntary. In *People v. Jolliff*, 31 Ill.2d 462, at 466, the court indicates that when counsel for a defendant promptly raises the issue of the voluntary nature of the confession, it becomes the duty of the court to hold a hearing out of the presence of the jury to determine that issue. The court found that denial of the request for such hearing was prejudicial error. In *People v. Bryant*, 101 Ill.App.2d 314, 243 N.E.2d 354, the court outlined the procedure to be followed in Illinois in light of the case of *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908. In that case the court indicated that the United States Supreme Court had held that a defendant in a criminal trial has the procedural due process right to a fair hearing and a reliable determination of the voluntariness of his confession. It was pointed out that in this State a defendant may raise that issue either by a pre-trial motion or when a confession is introduced in evidence by the State. Once the issue is raised, the trial court must, even on its own motion, conduct a hearing on the voluntariness of the statement.

The cases indicate that it is not up to the defendant to prove that the alleged statement was involuntary but rather that the burden is on the State to show that it was voluntary. As applied to the case before us, when

defendant raised the issue of voluntariness when first shown the written statement, the court should have conducted a special hearing on the question of whether or not the statement was made volutarily. The ruling of the trial court, therefore, could not be sustained on the ground that defendant failed to go forward with proof on this issue or to make an offer of proof.

■■ While the death of Mrs. Fox occurred in 1965 prior to *Miranda v. Arizona,* 384 U.S. 436, 476, 16 L.Ed2d 694, 86 S.Ct. 1602, the rule in Illinois that a confession must be voluntary was in force before the *Miranda* decision and there is no problem of applying such principles retroactively. As pointed out in *People v. Caldwell,* 39 Ill.2d 346 236 N.E.2d 706, 710:

> "The rule adopted in *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, which requires that an initial judicial determination of the voluntariness of a defendant's confession be made outside the presence of the jury when objection is made to its admission, has long been the law in this State."

The case of *Jackson v. Denno,* 378 U.S. 368 (1964), referred to heretofore, made a determination that the voluntariness of confession should be determined in a separate hearing outside the presence of the jury, when objection is made to the admission of such confession. Since we have seen that under the rule in this State as announced in *People v. Hiller,* 2 Ill.2d 323, there is no difference between a confession and a statement which is incriminating, defendant was obviously entitled to a hearing to determine the voluntariness of his statement when he objected to its admission into evidence.

■■ The State contends that it is possible to show from the record on appeal that the statement was made voluntarily and thus this cause should not be reversed, even though no separate hearing was held on the question of voluntariness as requested by defendant. While the State properly contends that there was strong evidence pointing to the guilt of defendant, as indicated in *People v. Knox,* 90 Ill.App.2d 149, the hearing must nevertheless be conducted to determine whether the statement was voluntary.

■■ It is, therefore, clear that there was error in failing to conduct a hearing on the voluntariness of defendant's statement. The problem before the court now is whether defendant should be granted a new trial or whether the cause should be remanded solely for the purpose of determining whether or not the statement was in fact made voluntarily. As stated in *People v. Knox,* 90 Ill.App.2d 149, at page 167, the cause should be remanded with directions to the trial court to vacate the judgment of conviction and conduct a hearing as to voluntariness in accordance with the court's opinion. If the court finds that the statements of the defendant

were made involuntarily, then the trial court should grant defendant a new trial. If the trial court finds that the statements were made voluntarily by defendant, the court shall then enter a new judgment and sentence in accordance with the verdict of the jury. The same procedure was followed by the Illinois Supreme Court in *People v. Strader*, 38 Ill.2d 93, 97–98. In the *Strader* case the court remanded for the purpose of a hearing on the issue of voluntariness of defendant's statements. It was pointed out specifically that if the statements were found to be voluntary, then the post-conviction petition should be dismissed. But, if found to be involuntary, the judgment and conviction was to be vacated and defendant granted a new trial. We, therefore, conclude that the procedure is proper and that this cause should be remanded with directions to the trial court to vacate the judgment of conviction and conduct a hearing as to voluntariness of the statement in accordance with this opinion. If the court finds that the statement of defendant was made involuntarily, the trial court should grant defendant a new trial. If the trial court finds that the statements were made voluntarily by defendant, the court shall enter a new judgment and sentence in accordance with the verdict of the jury.

The State has contended in its brief on appeal in this Court that a separate hearing is not necessary, so long as the court actually makes a finding sometime during the trial that the statement of defendant was given voluntarily. We find no precedent supporting this conclusion and believe that a specific hearing to determine the voluntariness of the statement should be conducted as we have indicated.

■■ Defendant contends that the argument of the prosecuting attorney was so improper as to deprive him of a fair trial. The prosecuting attorney, in his closing argument, implied that if a defense psychiatrist is on the stand a defendant could walk out "not guilty by reason of insanity". This argument was objected to by defendant and objection was overruled. The defense attorney in his argument discussed the same point, and stated that it was a slip of the tongue on the part of the State's Attorney in referring to the form of verdict, and that if the jury found defendant not guilty by reason of insanity, and if the man was still insane, he would not be out on the street. In rebuttal, the State's Attorney stated that a finding of not guilty by reason of insanity would mean that he is still insane, and that the State machinery would take care of him; that it would be difficult to determine whether it would be twenty years, two years, two weeks or two days before his release. Defendant contends that such argument was so prejudicial as to require a reversal and a new trial since the issue of insanity was a close question. The main thrust of the argument is that the State's Attorney, in rebuttal, had stated that defendant could be out on the street two days after being put in an institution. In the state of the

record, the argument would be grounds for reversal only if it is determined to be "seriously prejudicial" (*People v. Myers,* 35 Ill.2d. 311). In the course of the trial, defendant's attorney, in questioning a psychiatrist, asked him about a written memo given him by another attorney, which stated, "defense of insanity discarded due to chance of lifetime internment at Chester". Although this line of argument was initiated by the State, the defense attorney commented on the issue also in his argument. What the State's Attorney said in rebuttal, was responsive to what the defense attorney had said. In view of the record in this cause we do not believe that the comments and such argument would justify a reversal.

■■ Defendant also contends that the sentence of 99 to 100 years should be reduced on appeal. While the sentence of 99 to 100 years may not be consistent with the principle announced in *People v. Jones,* 92 Ill.App.2d 124, where the court recommended imposition of a minimum sentence of not in excess of ⅓ of the maximum sentence, but as indicated in *People v. Scott,* 117 Ill.App.2d 344, that standard is quoted only as a guide and not as a hard and fast rule. In view of the extreme brutality of the crime in the case before us, and on a review of the record in this cause, we do not believe we would be justified in modifying the sentence imposed in this case. *People v. Caldwell,* 39 Ill.2d 346.

This cause will, therefore, be remanded to the Circuit Court of Will County with directions to the trial court to vacate the judgment of conviction and conduct a hearing as to voluntariness of statement made by defendant. If the court finds that the statement of defendant was made involuntarily, the trial court should grant the defendant a new trial. If the trial court finds that the statement was made voluntarily by defendant, the court shall enter a new judgment and sentence in accordance with the verdict of the jury.

Limited remandment with directions.

RYAN, P. J., and STOUDER, J., concur.