[Crim. No. 4144. Fourth Dist., Div. 2. Mar. 29, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
ELDRED JAKE RICE, Defendant and Appellant.

## COUNSEL

Robert L. Dally, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch and Evelle J. Younger, Attorneys General, William E. James, Assistant Attorney General, and Gary P. Kesselman, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**GABBERT, J.**—Defendant was charged by an information with violation of Penal Code section 211 (Robbery). He was found guilty of second

degree robbery by a jury, sentenced to state prison, and now appeals from the judgment of conviction.

Defendant does not raise any question as to the sufficiency of the evidence to support the conviction. Therefore, only a brief summary of the facts surrounding the robbery is given. The robbery occurred at a drive-in restaurant in San Bernardino. The victim of the robbery immediately notified the police and gave a description of the robber, who had left the scene on foot. Approximately ten minutes after the robbery and some six blocks from the scene, defendant was arrested by a San Bernardino police officer. A search of defendant's person disclosed currency in the amount of $84. At the preliminary hearing and again at trial the victim of the robbery identified defendant as the robber.

The sole witness called by the defense was the defendant himself. He testified at the time of his arrest he was just out taking a walk. He stated he had been in San Bernardino for a few days prior to his arrest and had been working for a machine shop. While in San Bernardino defendant said he had been staying at the California Hotel. He testified the money found on him at the time of arrest was from his last employment in Oklahoma City.

After the defense rested, the prosecution indicated it wished to introduce rebuttal testimony. The testimony in rebuttal concerned statements made by defendant to police officers following his arrest which would tend to impeach his trial testimony.

To determine the admissibility of defendant's statements after his arrest, a hearing was held outside the presence of the jury. Detective Thomas of the San Bernardino police robbery detail testified he interviewed the defendant at the police department on the night of his arrest. Prior to any interrogation of defendant, Detective Thomas informed him of his rights to remain silent and to have an attorney present during questioning. Detective Thomas testified after informing defendant of his rights he asked him if he understood his rights and received an affirmative answer. However, defendant refused to sign a form which indicated he had been advised of his rights. Defendant told the officer he would not object to speaking to the officer. He also told the officer it would not be necessary to have an attorney present. Detective Thomas denied he informed the defendant it would be easier on him with the court if he continued speaking to the officer after defendant indicated he did not wish to continue speaking.

Officer Wood, the arresting officer, testified defendant was informed of his constitutional rights at the time of his arrest by Sergeant Wingrove. Defendant was not questioned by the arresting officer following his arrest,

nor did any officer speak to the defendant prior to the interrogation by Detective Thomas at the police station.

Sergeant Wingrove stated he informed the defendant of his constitutional rights at the time of his arrest and asked him if he wanted to talk. Sergeant Wingrove did not recall asking the defendant whether he wished to waive his right to remain silent. In response to Sergeant Wingrove's inquiry, defendant stated he did not wish to speak to him. No statement was taken from the defendant while en route to the police station, and no promises of leniency were made to defendant by Sergeant Wingrove.

Following the testimony of the three police officers, counsel argued the issue of admissibility of the statement. There was argument whether the statement was gained after a continuing period of questioning following defendant's statement to Sergeant Wingrove; whether he did not wish to discuss anything with the police or the statement was in response to an offer of leniency. In reaching its decision to allow the statement to be presented to the jury, the court stated: "I think that the preliminary finding has to be based upon that testimony [of the three police officers]. If the defense wants to before the jury put on the defendant again as rebuttal to the testimony, that is something they can put on at that time, and the jury has the final conclusion."[1]

Following the hearing out of the presence of the jury, the officers were allowed to testify concerning statements made by defendant after his arrest. Detective Thomas was asked questions concerning the manner in which he informed the defendant of his constitutional rights. He was then asked what statement was made by defendant after he had been informed of his

---

[1] After the court's ruling the following dialogue was held between defendant's counsel and the court:

"Mr. Vincent: Now, I think in a situation like this, the defendant would have the right to testify—

"The Court: He has the right to go on rebuttal, as I understand the law.

"Mr. Vincent:—to tell his side so the judge, out of the presence of the jury, who can make a determination of whether or not this is admissible.

"The Court: I don't find that in any of these cases that we have been referring to, that in the preliminary testimony given before the Court alone, that the defendant has ever testified. It is not shown in any of the records here.

"Mr. Vincent: I should think he has a right to affirmative defense at any stage of the proceedings.

"The Court: He has a right to affirmative defense in rebuttal, and the jury will take it—in fact, under the law, they make the final conclusion, it is not the Court. This is just a preliminary fact based on the testimony.

"In this case, based on the evidence submitted, the Court will find that the *Miranda* warnings were given and that the defendant, while he was in the police station, was again warned, given the *Miranda* warning, and that he at that time knowingly and intelligently waived his right to remain silent, and, further, that the statements were freely and voluntarily made at the station. I feel this case falls within the rule set forth in the *Duran* case."

rights and had agreed to speak to the officer. The officer testified defendant told him he had arrived in San Bernardino a few days prior to his arrest and had spent one night in a hotel and the remainder of the time on a park bench because he didn't have any money. Defendant told the officer he had received a large amount of money, which was found on him at the time of his arrest, from a stranger who walked up to him on the street just prior to his arrest and asked him if he needed any money. When the defendant stated he needed money the stranger handed him a roll of bills and walked away. The court permitted the testimony of Officer Wood and Sergeant Wingrove, which was given in the previous hearing outside the presence of the jury, to be read into the record.

Defendant then took the stand in surrebuttal. He stated no questions were asked of him en route to the police station. When he arrived at the station he was detained in a hallway in handcuffs for about an hour. When Detective Thomas arrived he removed the handcuffs and took defendant into an office. Detective Thomas then informed defendant of his *Miranda* rights and asked if he wanted to waive those rights. Defendant replied he did not wish to waive his right to remain silent, or to sign anything. According to defendant, after his refusal to speak, the officer told him ". . . it would look better for me in front of the judge if I would go ahead and tell him what happened, where the gun was and everything." Defendant testified he then went on to make a statement to the officer concerning his arrival in San Bernardino and where he had obtained the money which was found on him at the time of his arrest.

█ Defendant maintains error was committed by the trial court in admitting the testimony of the police officers on rebuttal concerning statements allegedly made by him after his arrest. The assignment of error on this issue is based on two separate premises: first, error in admitting the statement because it was made after defendant's initial refusal to waive his constitutional rights; second, error in admitting the statement because of the improper *voir dire* hearing by the court to determine the admissibility of the statements.

Although the conviction in *People* v. *Fioritto,* 68 Cal.2d 714 [68 Cal. Rptr. 817, 441 P.2d 625], was reversed because it was based on a confession obtained after defendant had once invoked his privilege to remain silent, that case is not controlling here. In *Fioritto,* after the defendant had refused to speak he was confronted with two alleged accomplices who had confessed and implicated him. Since we must resolve conflicts in testimony in favor of the prosecution on appeal from a conviction, the facts before us show defendant was first informed of his rights at the time of his arrest. He did not wish to say anything at that time. At the police station, de-

fendant again was informed of his rights, and this time he agreed to waive them and make a statement.

Based on these facts, we cannot say as a matter of law the statement was involuntary. *Fioritto* is directed at prohibiting attempts to induce a waiver of rights by coercive, pressure-filled interrogation techniques. Simply asking an individual a second time if he wishes to speak to police officers is an acceptable practice; statements so obtained are not inadmissible because of this. (*People* v. *Duran*, 269 Cal.App.2d 112, 116-117 [74 Cal.Rptr. 459].)

■ On the other hand, the court's refusal to allow defendant to testify during the *voir dire* hearing out of the presence of the jury to determine the admissibility of his statement was error. The court could not determine the preliminary facts relating to the admissibility of a statement made following an arrest when, as in this case, he refused the defendant, as his own sole witness, permission to testify. ■ Evidence Code section 405 requires a determination by the court of the existence or nonexistence of a preliminary fact requisite for the admission of proffered evidence. Concerning the voluntariness of a confession the comment states: "Under Evidence Code, . . . the court is required to withhold a confession from the jury unless the court is persuaded that the confession was made freely and voluntarily. The court has no 'discretion' to avoid difficult decisions by shifting the responsibility to the jury."

The question in this case of the voluntariness of an exculpatory statement, incriminating because patently unbelievable, is analogous. An "exculpatory" statement while in custody is no different from a confession for the purpose of this factual determination. (See *Miranda* v. *Arizona*, 384 U.S. 436, 477 [16 L.Ed.2d 694, 725, 86 S.Ct. 1602, 10 A.L.R.3d 974]; *People* v. *Brooks*, 64 Cal.2d 130, 138 [48 Cal.Rptr. 879, 410 P.2d 383]; *People* v. *Fox* (Ill.App.2d) 264 N.E.2d 502, 506.) ■ In the present case, the court informed defendant's counsel that if he wished to refute the testimony of the officers regarding the voluntariness of the statement, defendant could take the stand before the jury. This was an attempt to shift the responsibility for the determination to the jury, the very procedure criticized in the legislatively approved comment to the Evidence Code.

In *Kitchens* v. *State* (Fla. App.) 240 So.2d 321, the defendant sought to take the stand at a mid-trial evidentiary hearing on the voluntariness of his confession. Two police officers testified, out of the presence of the jury, to the circumstances of the confession. Defendant was denied the opportunity to testify and the confession was admitted—this was held reversible error. The hearing did not conform "either in substance or in spirit" to the

Florida counterpart of the procedure required by *Jackson* v. *Denno,* 378 U.S. 368 [12 L.Ed.2d 908, 84 S.Ct. 1774, 1 A.L.R.3d 1205].

The hearing at trial here was very similar to that held in *Kitchens,* and it likewise did not meet the *Jackson* v. *Denno* requirement that a defendant be given a fair hearing by someone other than the trial jury on the voluntariness of his statement. (See *Jackson* v. *Denno, supra,* p. 390, fn. 18 [12 L.Ed.2d at p. 923], citing *United States* v. *Carignan,* 342 U.S. 36 [96 L.Ed. 48, 72 S.Ct. 97], which held it reversible error for a federal court to refuse defendant the opportunity to testify at such a hearing.)

The Attorney General suggests the U.S. Supreme Court's recent decision in *Harris* v. *New York,* 401 U.S. 222 [28 L.Ed.2d 1, 91 S.Ct. 643], makes defendant's statement to police admissible for impeachment purposes. *Harris* holds voluntary statements made to officers where no *Miranda* warning is given may be used to impeach a defendant's testimony. This case does not apply here, however. There is no claim that *Miranda* warnings were not given; defendant himself testified they were. But unlike *Harris,* where the petitioner made "no claim that the statements made to the police were coerced or involuntary," defendant here asserted his statement was involuntary because obtained by a promise of leniency. *Harris* cannot be read as sanctioning the use of involuntary statements for impeachment or any other purpose; therefore, it remains important to hold a fair evidentiary hearing on the issue of voluntariness.

The question remains as to whether the error in admitting defendant's statement was prejudicial. ■ "The introduction in evidence of a *confession* obtained from the defendant in violation of constitutional guarantees is prejudicial per se and compels reversal regardless of other evidence of guilt. [Citations.] By contrast, the erroneous introduction of an *admission* is not prejudicial per se and the appellate court must weigh its impact on the trial in the light of the appropriate 'harmless error' test." (*People* v. *Powell,* 67 Cal.2d 32, 51-52 [59 Cal.Rptr. 817, 429 P.2d 137].)

■ In order for federal constitutional error to be held harmless, the reviewing court must be able to declare a belief the error was harmless beyond a reasonable doubt. (*Chapman* v. *California,* 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065].) Another way of stating the *Chapman* rule is it must appear to the reviewing court beyond a reasonable doubt the jury would have reached the same conclusion without the erroneously admitted evidence.

■ Whether or not an error was harmless beyond a reasonable doubt is a difficult concept to apply; there is not a great deal of guidance from decided cases. But here, the statement did do great harm because of its

nature. On direct examination defendant had given a plausible explanation for his possession of the money found on him at the time of his arrest. In light of the fact the only evidence presented by the prosecution connecting him to the robbery was the identification by the victim, the jury might have concluded his explanation created a reasonable doubt as to his guilt. However, the erroneous introduction of appellant's rather incredible explanation of how he obtained the money could well have so alienated the jury as to cause them to reject his more believable testimony, thus erasing any reasonable doubt as to his guilt.

In our view, the error seriously prejudiced the defendant's trial, and his conviction must be reversed.

Judgment reversed.

Gardner, P. J., and Tamura, J., concurred.

A petition for a rehearing was denied April 12, 1971, and respondent's petition for a hearing by the Supreme Court was denied May 26, 1971.