[Crim. No. 10951. First Dist., Div. One. Apr. 5, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
THOMAS CLIFTON TERRY et al., Defendants and Appellants.

## COUNSEL

Thomas G. Perkins, under appointment by the Court of Appeal, and Perkins & Hassan for Defendants and Appellants.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Robert R. Granucci and David Schneller, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MOLINARI, P. J.**—Defendants appeal from the judgments of conviction of armed robbery. (Pen. Code, § 211.) They make several assignments of error which we will consider separately with a narrative of the facts pertinent to each issue. Preliminarily we observe that defendants were charged with the armed robbery of a finance company occurring at about 4:30 p.m. on August 11, 1971,[1] and that at the trial they were identified as the robbers by employees of the company. The defense to the charge consisted of denial of participation in the robbery and alibi witnesses. Each of defendants, who are brothers, will hereinafter be referred to by his given name.

### The Confession

Royal gave a statement to Detective Rhodes which amounted to a confession of Royal's participation in the robbery. On the *voir dire* going to the issue of the voluntariness of the confession Rhodes testified that on August 26 Royal, who was then in custody and had his rights in mind, told Rhodes he wanted to give a voluntary statement. Rhodes testified that at the time the statement was given Royal appeared to be normal and did not appear to be suffering withdrawal symptoms. He stated that there was no discussion about Royal's release and that he never promised Royal that if he would give a statement Rhodes would see to it that Royal would be released on his own recognizance. The court found that Royal's statement was voluntary.

Rhodes took the stand again the following day. He testified that he had refreshed his recollection from records and ascertained that on August 26 at 4:40 p.m. he had discussed bail in the sum of $1,000 for Royal with Judge deLarios. Rhodes stated that this occurrence was the result of a conversation he had with Royal at the time of his booking (prior to obtaining the confession) in regard to information relating to the shooting of Sergeant Young at the Ingleside police station in San Francisco. At that time Rhodes asked Royal if he would act as an informant. He gave this circumstance as the reason for recommending low bail. Rhodes testified that on August 27 Royal was released on his own recognizance. Rhodes once again stated that he had made no promises to Royal with respect to the confession.

Royal took the stand in his own defense on the issue of the voluntariness of the confession. He stated that he was suffering withdrawal from heroin and that he had asked Rhodes for help. Royal stated that Rhodes promised him that if he would sign a confession to the robbery, Rhodes would cause "holds" on Royal from other counties to be lifted and would have Royal released on "OR" as soon as he went to court. Royal testified

---

[1] Unless otherwise indicated, all dates have reference to the year 1971.

that he was half out of his mind with withdrawal symptoms, and that he would have signed anything to get out of jail; that Rhodes wrote out the statement; and that he signed it in order to get out of jail. Royal stated he was released the next day on his own recognizance. When asked if Rhodes had offered to see about getting him out on bail in exchange for an agreement to get information concerning Sergeant Young's death, Royal answered that this conversation did occur but it took place about two weeks after he had been released from jail. After this additional testimony the court again found that the confession was free and voluntary.

When Rhodes took the stand, testifying before the jury, he stated that on August 26, 1971, he had a conversation with Royal after advising him of his rights; that Rhodes discussed with Royal the shooting of San Francisco Police Sergeant Young at Ingleside station; that Rhodes requested Royal to provide any information that he might have or that he might be able to obtain in relation to who was responsible for the crime; that Royal indicated that if he could "get out on the street" he could develop information that could be helpful in ascertaining who was responsible for "that shooting in San Francisco"; and that, for that purpose, Rhodes had the bail set at a lower figure. Rhodes then testified that he made no promises to Royal regarding the charges that were pending against him and then proceeded to state that he had obtained a written statement from Royal. The statement, which amounted to a confession, was then admitted into evidence.

Royal took the stand in his own defense. With respect to the confession, he testified substantially as he had on the *voir dire* and stated that Rhodes told him that if he signed a confession to this robbery Rhodes would get "holds" on him from other counties lifted and that he would see that Royal was released on his own recognizance. Royal testified further that he was sick and wanted to get out so he signed the confession which Rhodes had written down. He stated that on the next day he was released on his own recognizance.

Following Royal's conviction and while his appeal was pending defendants made a motion in this court requesting that we take judicial notice that Sergeant Young was shot and killed on August 29. The purport of this motion is to discredit Rhodes' testimony concerning the voluntariness of the confession in that on August 26, the date of the confession, Sergeant Young was alive and the incident resulting in his subsequent death had not yet occurred. In support of the motion defendants presented a certified copy of a certificate of death of Sergeant Young. We deferred decision on the motion pending the determination of the appeal on its merits.

■ Evidence Code section 452 provides that judicial notice may be taken of official acts of the legislative, executive, and judicial departments of a state and of facts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy. Accordingly, judicial notice may be taken of a death certificate. (*Ellenberger* v. *City of Oakland,* 76 Cal.App.2d 828, 835 [174 P.2d 461].) A reviewing court may take judicial notice of any matter specified in section 452. (Evid. Code, § 459.) If the matter was not theretofore judicially noticed in the action the reviewing court may take judicial notice of the matter, but the court is required to afford each party a reasonable opportunity to present to the court information relevant to the propriety of taking judicial notice of the matter and the tenor of the matter to be noticed. (Evid. Code, §§ 459, 455; see *Smith* v. *Hatch,* 271 Cal.App.2d 39, 49 [76 Cal.Rptr. 350]; *Holmes* v. *City of Oakland,* 260 Cal.App.2d 378, 384 [67 Cal.Rptr. 197].) Here, such opportunity has been afforded, and the parties have presented their relative positions with respect to the taking by us of the subject judicial notice.

■ The People contend that defendants should be precluded from making the request to this court because they failed to request the lower court to take judicial notice. As already indicated, this circumstance, in and of itself, does not preclude the request to this court. Evidence Code section 459 specifically provides that a reviewing court may take judicial notice of the matters provided for in Evidence Code section 452 where the matters have not been previously noticed if the matter sought to be judicially noticed "is of substantial consequence to the determination of the action."

We apprehend that since evidence obtained by means of an involuntary confession is inadmissible (*People* v. *Ditson,* 57 Cal.2d 415, 439 [20 Cal. Rptr. 165, 369 P.2d 714] [cert. den., 371 U.S. 852 (9 L.Ed.2d 88, 83 S.Ct. 67)] and the introduction of an involuntary confession is reversible error per se (*People* v. *Matteson,* 61 Cal.2d 466, 470 [39 Cal.Rptr. 1, 393 P.2d 161]), and that the use in a criminal prosecution of involuntary confessions constitutes a denial of due process of law under both the federal and state Constitutions (*People* v. *Trout,* 54 Cal.2d 576, 583 [6 Cal. Rptr. 759, 354 P.2d 231, 80 A.L.R.2d 1418]; *Payne* v. *Arkansas,* 365 U.S. 560, 561 [2 L.Ed.2d 975, 977, 78 S.Ct. 844]), we should take judicial notice of a fact which is properly the subject of judicial notice and is a fact which is relevant to the issue of voluntariness. We accordingly deem the date of Sergeant Young's death to be a matter that we ought

to judicially notice and grant the motion requesting that we take such notice.

■ It is the duty of a reviewing court to make an independent examination of the record for uncontradicted facts showing involuntariness. (*People* v. *Trout, supra,* 54 Cal.2d 576, 583; *People* v. *Berve,* 51 Cal.2d 286, 290 [332 P.2d 97]; *Stroble* v. *California,* 343 U.S. 181, 190 [96 L.Ed. 872, 880-881, 72 S.Ct. 599]; *Payne* v. *Arkansas, supra,* 356 U.S. 560, 562 [2 L.Ed.2d 975, 977-978].) ■ "The test for voluntariness of a confession is whether or not the accused exercised 'mental freedom' in confessing [citation] or whether the confession was the expression of free choice [citation]. 'The *slightest* pressure, whether by way of inducement to confess, or threat if confession is withheld, is sufficient to require the exclusion of the confession.' [Citation.]" (*People* v. *Berve, supra,* 51 Cal.2d 286, 291.) ■ "Before a confession may be used against a defendant the prosecution has the burden of showing that it was voluntary and was not the result of any form of compulsion or promise of reward, and it is immaterial whether the pressure or inducement was physical or mental and whether it was express or implied. [Citations.]" (*People* v. *Trout, supra,* 54 Cal.2d 576, 583.)

■ In the present case the prosecution presented evidence on the issue of the voluntariness of the confession that at the time Royal gave his confession he was not acting under any mental or physical infirmity, that Rhodes made no promises to Royal that he would be released on his own recognizance if he gave a statement, and that Rhodes recommended low bail to the judge because Royal had agreed to act as an informant in the incident involving the shooting of Sergeant Young. Royal testified that at the time he gave the statement he was suffering withdrawal symptoms, that Rhodes told him he would be released on his own recognizance if he signed a confession to the robbery, that he signed the statement in order to get out of jail, and that he was released the next day on his own recognizance. With respect to the conversation regarding Sergeant Young, Royal admitted having such a conversation with Rhodes but stated it did not occur on August 26 but occurred about two weeks after he had been released from jail. We observe that both Rhodes and Officer Petrocchi testified that Royal was not undergoing withdrawal symptoms when he signed the statement.

In his testimony before the jury, following the *voir dire* as to the voluntariness of the confession, Rhodes reiterated that Royal's release pending the instant charge was effected for the purpose of having Royal assist the police in obtaining information that might be helpful in ascertaining

who was responsible for the homicide of Sergeant Young. This testimony was contradicted by Royal who testified that Rhodes told him that if he signed a confession to the robbery Rhodes would procure his release on his own recognizance.

Under the state of the record the uncontradicted fact remains that Rhodes did intervene with the judge to secure Royal's release on low bail and that he was in fact released on his own recognizance the day after he signed the confession. It is uncontradicted that this release was effected by Rhodes on the basis of an inducement made by Rhodes to Royal prior to the making of the confession. Moreover, it is unlikely that Royal, who was charged with robbery, would be released on his own recognizance except in return for some inducement. Rhodes stated that the inducement for the release was Royal's agreement to act as an informant in the Sergeant Young homicide. It now appears that this homicide had not occurred when Royal's release was secured. It should be noted here that the People do not contend otherwise, nor do they contend that the person whose death certificate we judicially notice is not the Sergeant Young to whom Rhodes purportedly referred in his conversation with Royal. In this regard we note, further, that Royal does not deny having a conversation with Rhodes regarding Sergeant Young, but that this conversation took place about two weeks after Royal's release on his own recognizance and at a time subsequent to Sergeant Young's demise.

■ Adverting to the *voir dire* held before the trial judge for the purpose of determining the voluntariness of the confession, we observe that the purpose of this procedure is to permit the judge to make a preliminary determination as to whether a confession or admission was voluntary before admitting the confession or admission into evidence. (Evid. Code, §§ 405, 402, subd. (b); *People* v. *Burton,* 6 Cal.3d 375, 389-390 [99 Cal.Rptr. 1, 491 P.2d 793]; *People* v. *Rice,* 16 Cal.App.3d 337, 343 [94 Cal.Rptr. 4]; *People* v. *Carroll,* 4 Cal.App.3d 52, 58-59 [84 Cal.Rptr. 60].) The burden of proof on this preliminary issue is on the prosecution. (Evid. Code, §§ 405, 115; see *People* v. *Chavarria,* 276 Cal.App.2d 66, 69 [80 Cal.Rptr. 600].) If the judge is not persuaded that the confession was voluntary he must exclude it. (See *People* v. *Burton, supra,* at p. 389; *People* v. *Rice, supra.*)

■ In the instant case the admission of the confession turned on the credibility of Rhodes and Royal. In view of the trial court's ruling on the admissibility of the confession it is reasonable to assume that it deemed Rhodes' testimony to be credible. Whether it would have come to a different conclusion had it been apprised of the true date of Sergeant Young's

homicide we have no way of knowing. We do believe, however, that the court should have had before it the fact of the date of Sergeant Young's death in order to make a proper determination with respect to the voluntariness of the confession. In view of the burden reposing on the prosecution we think it was incumbent upon the People to have ascertained the true date of Sergeant Young's death, particularly when a matter of judicial notice was in apparent contradiction to testimony relied upon by the People to persuade the trial court that the confession was voluntary. Under the circumstances we must conclude that there was no reliable determination of the voluntariness issue since the determination of that issue included, of necessity, a resolution of disputed facts upon which the voluntariness issue may depend. (See *Jackson* v. *Denno,* 378 U.S. 368, 390-391 [12 L.Ed.2d 908, 923-924, 84 S.Ct. 1774, 1 A.L.R.3d 1205].)

In the present case it will not serve to reverse the case with a remand for the purpose of affording Royal an adequate hearing upon the voluntariness of his confession and a reliable resolution of the evidentiary conflicts, with a direction that if, at the conclusion of such a hearing, the trial court determines that the confession was voluntarily given, judgment be reentered without the necessity of a new trial. In *Jackson* v. *Denno,* it was held that where the confession has already been before the jury and the defendant has been found guilty, there is no constitutional necessity for proceeding with a new trial if, at the conclusion of an evidentiary hearing on the voluntariness issue conducted on a remand, the trial court determines that the confession was voluntarily given, admissible in evidence, and properly to be considered by the jury. (378 U.S. 368, 394 [12 L.Ed. 2d 908, 925-926].) But here the jury was not only presented with the confession itself but with the circumstances surrounding the giving of the confession. These were the same circumstances testified to substantially on the *voir dire* conducted for the purpose of determining the voluntariness of the confession.

In *Carroll* it was held when evidence of voluntariness of a confession is heard on *voir dire* by the court the sole issue is the admissibility of the evidence, which determination is a question of law. (4 Cal.App.3d at p. 60.) *Carroll* points out, however, that when the same evidence is offered during the trial a question of fact is presented and such evidence becomes relevant to weight or credibility. (At p. 60; see Evid. Code, § 406.) Accordingly, when the same evidence is offered during the trial to prove the unreliability of the confession as evidence of guilt the jury must determine whether the confession is true, partially true, or completely false. (*People* v. *Carroll, supra,* at pp. 60-61.) In the present case there was not only evidence to prove the unreliability of the confession but the People offered evidence of

its reliability by evidence that Royal's release on his own recognizance was not obtained because he signed the confession but because he promised to cooperate in the Sergeant Young homicide investigation. The jury was instructed that it was the exclusive judge as to whether the confession was made by defendant and if the statement was true in whole or in part, and it was instructed that if it found that the statement was entirely untrue it must reject it. In view of the circumstance that the Sergeant Young homicide had not occurred when the confession was given the jury might well have rejected the confession which it was called upon to weigh in accordance with the instructions given by the court.

### Aranda *Rights*

■ Thomas contends that the admission of Royal's confession violated his rights under *People* v. *Aranda,* 63 Cal.2d 518 [47 Cal.Rptr. 353, 407 P.2d 265]. *Aranda* holds that when the prosecution proposes to introduce into evidence an extrajudicial statement of one defendant that implicates a codefendant the court can permit a joint trial if all the parts of the extrajudicial statement implicating any codefendants can be and are effectively deleted without prejudice to the declarant. (At p. 530.) Here the part of Royal's confession which might be considered as implicating Thomas is Royal's statement that he arrived in South San Francisco with "two other Negro males." In his confession Royal used the pronoun "we" twice.

The record discloses that both the court and the prosecutor were aware of the potential *Aranda* problem. The prosecutor indicated he did not intend to introduce the writing in evidence and proceeded to question Rhodes with respect to the contents of the confession. Counsel for Thomas objected to this procedure on the ground of the best evidence rule. The district attorney then moved to have the confession admitted into evidence stating, "If there is no objection from the defense, then the People will offer this item, the statement itself, into the record in evidence." *Neither* defense counsel objected to its admission.

The failure to object and assert one's *Aranda* rights at trial constitutes a waiver of those rights. (*People* v. *McGautha,* 70 Cal.2d 770, 785 [76 Cal.Rptr. 434, 452 P.2d 650].) Here Thomas did not move for a severance of the trial (see *People* v. *McGautha, supra*), nor did he object when Royal's confession was introduced in evidence. Moreover, Thomas' counsel actively sought the admission of the confession. It must be noted that the record also discloses that Thomas' counsel was of the opinion that the confession made no reference to his client. Under all these circumstances Thomas clearly waived any *Aranda* rights that he may have had.

■ We note, further, that although *Bruton* v. *United States,* 391 U.S. 123, 127-128 [20 L.Ed.2d 476, 480-481, 88 S.Ct. 1620], holds that a defendant is denied his constitutional right of confrontation where the extrajudicial statement of a codefendant implicating him is admitted in evidence and the codefendant does not take the stand, this rule does not apply where the codefendant takes the stand in his own defense and denies making an alleged out-of-court statement implicating the defendant. (*Nelson* v. *O'Neil,* 402 U.S. 622, 628-630 [29 L.Ed.2d 222, 227-229, 91 S.Ct. 1723].) The *Nelson* principle is applicable here. Royal took the stand, denied participation in the robbery, testified that the contents of his statement were not true, and stated that he had only signed the statement to get out of jail. Having taken the stand, Royal was subject to cross-examination by Thomas, the codefendant.

### *Driving Time Experiment*

■ Defendants assert that it was error to permit Detective Petrocchi to testify as to the time it took to drive between the finance company in South San Francisco and Fifth Street in San Francisco. Petrocchi testified that he had driven his unmarked police car on Thursday, April 13, 1972, at 4:30 p.m. from the finance company to Fifth Street, and the trip took him 13 minutes. He testified that he did not exceed the speed limit, that he drove on the freeway, that there was no construction on the freeway and that he did not recall having seen any such construction in August of 1971 (the day of the robbery). This testimony was given after the defense had rested, and was in rebuttal to defendants' alibi testimony. The prosecution was attempting to show that the robbery could have been committed by defendants, that they would still have had time to return to the vicinity of Royal's apartment, and that during this interim Thomas could then have gone into the grocery store and been arrested.

The defense to the charge consisted of denial of participation in the robbery and alibi witnesses. Tony Kuta, a grocer on Fifth Street in San Francisco, testified that a black male had come into the store to purchase liquor, that he was intoxicated, and Kuta refused to sell him more liquor. When the man refused to leave, Kuta found a police officer outside his store, and the officer arrested the man. Kuta thought this occurred around 3:30 p.m., August 11.

Royal's wife testified that her husband was home all afternoon on August 11. Royal's mother testified that she received a call from Royal at 4:30 p.m. on that day. She also received a call around 6:30 that evening, and then she spoke with her husband about bailing Thomas out of jail.

Royal testified that he saw his brother Thomas being arrested outside the grocery store around 5:30 p.m. on that day. Lee Harris testified that he was at Royal's house around 4 p.m. on that date. He was not sure how long he stayed there.

Thomas' wife testified that Thomas left the house for the first time on August 11 at 4 p.m. She got a call from him from jail at 6 p.m. Thomas testified that he went to his brother's place at 4 p.m. He knocked on the door, but received no response. He bought some beer, and then he went back to the grocery store about 5 p.m. Kuta called the police and he was arrested.

Defendants objected to Petrocchi's testimony with respect to the driving experiment. They objected on the ground that the experiment was conducted on a different day of the week from that on which the robbery occurred and that too long a period had elapsed between the robbery and the experiment.

Evidence of an experiment is admissible when the experiment is shown to have been made under conditions substantially similar to those which gave rise to the issue on which the evidence is offered. (See *People* v. *Ely,* 203 Cal. 628, 632-633 [265 P. 818]; *People* v. *Phelan,* 123 Cal. 551, 568 [56 P. 424]; *People* v. *Spencer,* 58 Cal.App. 197, 227-228 [208 P. 380].) The requirement is that there be substantial similarity and not identity of conditions. (*People* v. *Spencer, supra,* at p. 228; *Yecny* v. *Eclipse Fuel Engineering Co.,* 210 Cal.App.2d 192, 204 [26 Cal.Rptr. 402].) The determination whether the conditions were substantially similar to make the experiment of any value in aiding the jury is a matter resting in the sound discretion of the judge. (*People* v. *Ely, supra,* at p. 633; *Yecny* v. *Eclipse Fuel Engineering Co., supra.*) In the present case there was a sufficient showing that the conditions of the experiment were substantially similar to those existing on the date of the robbery. The robbery occurred on a weekday, and the fact that the experiment took place on a Thursday rather than on a Wednesday is not significant since the traffic conditions should be substantially similar on both days at the same hour. The fact that the experiment took place some eight months after the robbery is equally insignificant since it is not contended that the subject highway and traffic conditions at each of these times were dissimilar.

The relevancy of the experiment evidence is readily apparent. Defendants presented testimony that they had not been on the scene at the time of the robbery. In support of this assertion, they attempted to show that the fact Thomas was arrested in San Francisco between a half hour and

an hour after the robbery occurred precluded their presence at the scene of the robbery. The rebuttal evidence in the form of an experiment was meant to show that it was possible for defendants to have committed the crime and returned to the scene of the arrest. Defendants themselves left the door open for the experiment evidence when they attempted to show that they could not have committed the crime because they were elsewhere. We perceive no error in the admission of the subject evidence.

### Prior Felony Convictions

 Thomas was asked on cross-examination if it was true that he had been previously convicted of a fraudulent check charge and two robberies. He responded in the affirmative. The prosecutor then asked him if it wasn't also true that the two robberies were robberies of finance companies. When an objection to this question was overruled, Thomas answered that the two convictions of robbery involved robberies of finance companies. It is asserted that the overruling of the objection constituted prejudicial error.

The People concede that Thomas should not have been required to divulge the scene of the prior robberies since such evidence went beyond the proper scope of inquiry into a defendant's prior convictions. (See *People* v. *Schader,* 71 Cal.2d 761, 773 [80 Cal.Rptr. 1, 457 P.2d 841]; *People* v. *Smith,* 63 Cal.2d 779, 790 [48 Cal.Rptr. 382, 409 P.2d 222] [cert. den., 388 U.S. 913 (18 L.Ed.2d 1353, 87 S.Ct. 2119)].) They argue, however, that Thomas was not prejudiced by the admission of this evidence.

 We first observe that evidence of a witness' prior felony convictions is admissible to impeach his credibility. (Evid. Code, § 788.) This inquiry is restricted to the name and nature of the crime and the date and place of conviction. (*People* v. *Schader, supra,* 71 Cal.2d 761, 773; *People* v. *Smith, supra,* 63 Cal.2d 779, 790.) The subject inquiry exceeded this restriction.

We also note that evidence of a defendant's commission of a prior offense is also admissible to prove a material fact such as identity, motive or intent, and modus operandi common to both the other crimes and the crime charged. (Evid. Code, § 1101, subd. (b); see *People* v. *Haston,* 69 Cal.2d 233, 245 [70 Cal.Rptr. 419, 444 P.2d 91]; *People* v. *Enos,* 34 Cal.App. 3d 25, 34-35 [109 Cal.Rptr. 876].) The trial court instructed the jury that the evidence that a defendant committed other crimes could only be considered for the limited purpose of determining if it tended to show the identity of the person who committed the crime, if any, of which he was accused; a motive for the commission of the crime charged; the existence

of the intent which is a necessary element of the crime charged; and a characteristic method, plan or scheme in the commission of criminal acts similar to the method, plan or scheme used in the commission of the offense in this case. This instruction ought not to have been given since the prosecutor did not present sufficient evidence warranting the giving of the instruction. In order that evidence of other crimes may be admitted such evidence must be relevant, i.e., there must be precise elements of similarity between the offenses with respect to the issue for which the evidence is proffered and each link of the chain of inference between the former and the latter must be reasonably strong. (*People* v. *Schader, supra,* 71 Cal.2d 761, 775.) In the instant case all that the prosecutor established by his questioning was that the two prior robberies were of finance companies.

We conclude, therefore, that it was error for the trial court to have permitted the prosecutor to ask Thomas if the two prior robberies were of finance companies. Considered with respect to an attempt at impeachment the question was improper; as an attempt to elicit evidence to prove a prior similar offense the answer elicited by the question fell short of having any probative value and should not have been permitted for this purpose in the absence of a showing that the prosecutor was able to prove the precise elements of similarity between the prior robberies and the instant charged offense with respect to the issue for which the evidence was proffered.

However, we do not deem the error to be prejudicial. Nor do we consider the instruction on the effect of the evidence of other crimes to be prejudicial. The instruction stated the limited purpose for which the jury might consider evidence that a defendant committed other crimes and that it could consider such evidence only if "it tends to show" identity, motive, intent and modus operandi. Since there was no evidence establishing that the prior crimes had any relevancy to these elements the instruction was essentially superfluous. We observe that the evidence that Thomas had been convicted of two prior robberies was properly before the jury for purposes of impeachment. The admission of evidence that these robberies were of finance companies was clearly evidence which might militate against Thomas were it not for the strong and convincing evidence against Thomas in terms of eyewitness identification. Accordingly, we cannot say, after an examination of the entire cause, including the evidence, that a result more favorable to Thomas would have been reached in the absence of the error. The error, therefore, was harmless. (*People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243] [cert. den., 355 U.S. 846 (2 L.Ed.2d 55, 78 S.Ct. 70)]; Cal. Const., art. VI, § 13.)

## Instruction Urging Agreement

After retiring for deliberations the jury informed the court that it had reached a verdict as to Royal but could not reach a verdict as to Thomas. The court then instructed the jury on the advisability of endeavoring to reach a verdict.[2] At the conclusion of this instruction the court stated: "I am going to ask you to return, and bear in mind that instruction and see if, under the circumstances, you cannot perhaps reach a decision as to the other defendant, that is, Thomas Clifton Terry. I understand you have already reached a decision in regard to Royal Stafford Terry, so that should not be discussed any further, insofar as the verdict is concerned in his regard. [¶] All you have to do is attempt to reach a verdict in regard to Thomas Clifton Terry."

Thomas contends that the quoted conclusionary part of the instruction was coercive and indicated to the jury that it should find Thomas guilty because it found Royal guilty. Thomas argues that when the judge said "see if, under the circumstances" he was referring to the circumstance of finding Royal guilty. In essence Thomas asserts that the jury was told that since it had found Royal guilty, it should find Thomas guilty. We do not agree that the instruction must be so interpreted. We first observe that the trial judge did not know whether Royal had been found guilty or whether the jury had voted to acquit him. A more reasonable interpretation is that the trial judge was referring to the jurors' duties and the manner in which they should comport themselves in their relationship to each other in attempting to reach a verdict as delineated in the instruction which preceded the part in question.

The motion that we take judicial notice of the date of injury causing death and the date of death of Sergeant John V. Young as being August 29, 1971, is granted. The judgment entered against defendant Royal Staf-

---

[2]This instruction was embodied in a long statement identical to that given by the trial judge in *People* v. *Baumgartner*, 166 Cal.App.2d 103, 105-106 [332 P.2d 366]; *People* v. *Barnes*, 210 Cal.App.2d 740, 747-748 [26 Cal.Rptr. 793], and *People* v. *Ortega*, 2 Cal.App.3d 884, 896 [83 Cal.Rptr. 260]. In *Baumgartner*, the instruction was ground for reversal as being coercive because when the judge gave it he had been advised by the foreman that the jury stood 11 to 1 for conviction. In *Barnes* and *Ortega* the instruction was held not to constitute prejudicial error because, although the trial court was aware that the jury stood 10 to 2 it was unaware whether the jury stood 10 to 2 for acquittal or conviction. In the present case the judge did not inquire as to how the jury stood numerically. He was merely advised that the jury had reached a verdict as to Royal but had not reached a verdict as to Thomas. Under the rationale of these cases the giving of an instruction in the present case, identical to that given in *Baumgartner, Barnes* and *Ortega,* did not constitute prejudicial error.

ford Terry is reversed. The judgment entered against defendant Thomas Clifton Terry is affirmed.

Sims, J., and Elkington, J., concurred.

A petition for a rehearing was denied May 3, 1974.