420 A.2d 422

COMMONWEALTH of Pennsylvania

v.

James E. HUGNEY, Appellant.

Supreme Court of Pennsylvania.

Submitted May 23, 1980.

Decided Sept. 22, 1980.

Marilyn C. Zilli, Asst. Public Defender, for appellant.

Marion E. MacIntyre, First Asst. Dist. Atty., for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

Appellant, James E. Hugney, was convicted by a jury of murder of the second degree and arson. Post–verdict motions were denied and appellant was sentenced to life imprisonment for the murder conviction and to a consecutive prison term of ten to twenty years for the arson conviction.

Following sentencing, privately-retained trial counsel withdrew from the case and the Dauphin County Public Defender was appointed to assist appellant on his direct appeal. Subsequently, appellant filed a motion for a new trial on the basis of after-discovered evidence. Following two days of hearings on the motion, it was denied and this direct appeal followed.

The facts as adduced at trial are as follows. In the early morning hours of August 20, 1978, at approximately 6:15 a. m., a fire broke out at appellant's residence at 1625 Bamburger Road, Susquehanna Township. Firemen were notified by a neighbor, Bernice Shutt, who was awakened by the fire. Ms. Shutt ran outside where the victim, Jimmy Hugney, appellant's sixteen-year-old son, had collapsed with 98% of his body covered with third-degree burns. The victim told Ms. Shutt, "I was sleeping, there is something wrong, that fire was too fast, maybe it was electrical."

The first official on the scene, Township Fire Marshall John Brindle, Sr., was directed to the victim by Ms. Shutt. The victim told Brindle that he had been awakened by what he thought was a fire bomb and had immediately run out of the house. When Detective Paul Kinsinger of the Susquehanna Township police arrived shortly thereafter, the victim told him he heard a loud bang and upon waking up, everything was on fire. The victim was removed by ambulance to a local hospital and subsequently was transferred to the Burn Center of St. Agnes Medical Center in Philadelphia, where he died five days later.

Four experts testified at trial, all opining that the fire was of incendiary origin. William Sweet, a qualified expert, testified that he noticed "flow patterns" in the victim's bedroom and in adjacent rooms; these patterns led to Sweet's conclusion that a flammable substance had been poured on the floors and set ablaze.

Margaret Hugney, wife of appellant and mother of the victim, testified that she and appellant had been married for seventeen years; the pair, however, had separated two months before the fire. On the night of the fire, Mrs.

Hugney had returned home with appellant from their jointly owned used car lot. She testified that appellant had purchased a can of gasoline, allegedly for use in appellant's motorcycle. Mrs. Hugney further testified that she and her youngest son, Scott, spent the night at the house of Harry Whitman, Sr., her boyfriend. The following morning at the Whitman residence, she was notified of the fire by township police officers. Mrs. Hugney's version of the evening's events were verified by Mr. Whitman.

Mrs. Hugney, who was later recalled to testify, stated that the relationship between appellant and the victim was not "friendly. It was rather hostile." She testified about constant fights between the pair. In fact, she related an incident where appellant had struck the victim with a board which had a screw in it, puncturing the victim's shoulder.

Patricia Bonacci testified that she had been involved with appellant and had, in fact, borne him two children, one eleven months old and another born a week before the trial. She testified that she and appellant had made plans to move to Clearfield County and had in fact signed a sales agreement for the purchase of a house in that area.

Ms. Bonacci further testified that on the night of the fire, she had intermittently been with appellant. She told how shortly before 6:00 a. m. appellant drove off by himself, returning some time later. Ms. Bonacci testified that appellant had told her that he had driven to the Bamburger Road residence. She was then asked: "Did he indicate that he had gone inside the house?" Ms. Bonacci replied "No." The Commonwealth then pleaded surprise and asked that Ms. Bonacci be declared a hostile witness. After a sidebar conference, the Commonwealth was allowed to establish that in a statement given to police shortly after appellant's arrest and at appellant's preliminary hearing, Ms. Bonacci had indicated that appellant told her that he had, in fact, gone inside the house.

Testimony was also introduced that at the time of the fire, the Bamburger Road home was in the names of both appellant and his wife; the fire insurance, however, was only in

appellant's name. Because of appellant's failure to pay property taxes on the home for 1976–78, the residence had been posted for a tax sale. Further, the Dauphin County Prothonotary testified that various judgments had been entered against appellant's used car business, M & J Auto Sales and against appellant personally.

Finally, Harry Whitman, Jr., the son of Mrs. Hugney's boyfriend, testified that he had been incarcerated in the Dauphin County Prison at the same time as appellant. Whitman testified that appellant had told him that he had set fire to the Bamburger Road residence because he was "fed up with everything."

Appellant first argues that the evidence presented at trial was insufficient to sustain his convictions. We do not agree.

As we have oft stated:

" . . . [W]hen called upon to review the sufficiency of the evidence to sustain a criminal conviction, an appellate court is to determine whether all the elements of the crime charged have been proven beyond a reasonable doubt. Because the fact finder is free to believe all of, part of, or none of the evidence, we view all the evidence and all inferences properly deducible from it in the light most favorable to the prosecution as verdict winner." *Commonwealth v. Horton*, 485 Pa. 115, 117, 401 A.2d 320, 321 (1979).

A review of the evidence presented at trial shows clearly that the Commonwealth had been able to prove all of the elements of both murder of the second degree and arson. Thus, appellant's claim is without merit.

Appellant next argues that the court erred in admitting the hearsay statements of the victim, which were given within fifteen minutes of the fire. As we believe the instant statements are classic examples of the "res gestae" exception to the hearsay rule, we find that the statements were properly admitted into evidence.

In *Commonwealth v. Banks*, 454 Pa. 401, 408–09, 311 A.2d 576, 580 (1973), we stated:

"The rule permitting res gestae declarations to be introduced in evidence has been stated in *Commonwealth v. Cheeks*, 423 Pa. 67, 223 A.2d 291 (1966): 'The principle is based upon the rationale that a spontaneous declaration of an individual who has recently suffered an overpowering emotional and shocking experience is likely to be truthful. See, I Henry, Penna. Evidence, § 466 (1953). Such evidence is limited to declarations supporting the conclusion that the statements were spontaneous utterances of thought created by, or emanating from, the litigated act, and so near in time thereto as to exclude the possibility that they were the product of premeditation or design. See, *Commonwealth v. Noble*, 371 Pa. 138, 88 A.2d 760 (1952); *Commonwealth v. Rumage*, 359 Pa. 483, 59 A.2d 65 (1948); and, *Commonwealth v. Cupps*, 157 Pa.Super. 341, 43 A.2d 545 (1945). No definite time limit, or distance from the site of the crime, has been fixed by the courts in determining what spontaneous utterances are admissible as part of the res gestae. Each case has been judged on its own facts and circumstances; *Commonwealth v. Stokes*, 409 Pa. 268, 186 A.2d 5 (1962), and cases cited therein. The length of time which has elapsed between when the declarations were uttered and when the occurrence took place is only one element to be considered in determining their spontaneity. See *Commonwealth v. Noble*, supra, and *Commonwealth v. Harris*, 351 Pa. 325, 41 A.2d 688 (1945).' Id., 423 Pa. at 70, 223 A.2d at 293. In *Commonwealth v. Cheeks*, supra the statements in question which were held admissible were made by the victim forty–five minutes after the attack. In the case at bar it is clear that the entire series of statements was given within fifteen minutes or at the most twenty minutes after the attack had occurred. Reconstructing the picture as disclosed by the testimony, the conclusion is inevitable that the statements were spontaneously uttered, were directly related to the attack that had been perpetrated upon the decedent, and were not the result of reflection or design."

As we can perceive no difference between *Banks* and the instant case, we believe the trial court acted properly in admitting the victim's statements.[1]

Appellant next alleges that the Court erred in refusing his motion for a new trial on the basis of after–discovered evidence. The allegedly after–discovered evidence related to the trial testimony of Harry Whitman, Jr., to whom appellant supposedly admitted starting the fire while the pair were incarcerated together in the Dauphin County jail.

A hearing on appellant's motion was held on January 21, 1980, and again on January 30, 1980. A number of witnesses testified. Three witnesses narrated how, for one reason or another, each of them had reason to believe Whitman had fabricated his trial testimony implicating appellant. Appellant's parole officer testified that Whitman had been released on parole two months earlier than the date recommended by the State Board of Parole. An attorney who had represented another defendant in an unrelated case testified that Whitman has testified against that defendant who also had allegedly admitted guilt to Whitman while in jail.

In *Commonwealth v. Valderrama*, 479 Pa. 500, 505, 388 A.2d 1042, 1045 (1978), we set forth our well–established rule concerning after–discovered evidence:

"After–discovered evidence is a basis for a new trial if it

" '. . . (1) has been discovered after the trial and could not have been obtained at or prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) *will not be used solely for impeaching credibility of a witness*; and (4) is of such nature and character that a different verdict will likely result if a new trial is granted.'

1. Appellant argues that the statements should have been found unreliable because the victim had past history of playing with fire bombs and gun powder. In fact, the victim had, some time before the fire, suffered the loss of his hand in an explosion of his own making. As the victim may very well have been a suspect in the instant fire, appellant argues that the victim's statements were self–serving.

230 of

*Commonwealth v. Mosteller*, 446 Pa. 83, 88, 284 A.2d 786, 788 (1971)." (Emphasis added).

We believe the court below properly denied appellant's motion, as all of the evidence presented at the hearing would have only, if introduced a trial, impeached Whitman's credibility. Appellant's argument is thus without merit.

Appellant finally alleges that he was denied the effective assistance of trial counsel. As we stated in *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 604–05, 235 A.2d 349, 352–53 (1967):

"... counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests. The test is *not* whether other alternatives were more reasonable, employing a hindsight evaluation of the record." *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 605, 235 A.2d 349, 352–53 (1967). (Emphasis in original).

Furthermore, we will find a reasonable basis for inaction if the thing not done required the assertion of a claim not established by the record. *Commonwealth v. Wilson*, 482 Pa. 350, 393 A.2d 1141 (1978); *Commonwealth v. Rice*, 456 Pa. 90, 318 A.2d 705 (1974). It is with these standards in mind that we will review appellant's claims of ineffectiveness of trial counsel.

Appellant first argues that trial counsel was ineffective for failing to call a witness to testify that the fire *could have* been caused by faulty wiring in an electrical box. Suffice it to say that four well–qualified experts testified for the Commonwealth that the fire was of an incendiary origin and calling the witness proposed by appellant would have had little effect.

Appellant also claims ineffectiveness on trial counsel's part for failure to bring out at trial that appellant's wife allegedly knew of appellant's intention to change the fire policy on the residence into both his and his wife's names. While this could have shown that Mrs. Hugney had a possi-

ble motive to set the fire, it would have had little if any effect, as both Mrs. Hugney and Harry Whitman, Sr., testified that they spent the night of the fire at Whitman's apartment.

Appellant finally claims that counsel was ineffective for failing to put forth a certain defense, i. e., that the victim started the fire himself. The decision not to present a defense is a tactical one and will not be deemed ineffective assistance if there is a reasonable basis for that position. See *Commonwealth v. Rice, supra.* We believe it would have been fruitless in light of the victim's classic *res gestae* declarations.[2] Counsel was not ineffective for failing to put forth the proposed defense.

Judgments of sentence affirmed.

---

2. The jury was in fact informed of the victim's proclivity towards playing with fire and gun powder.