434 A.2d 1282

**COMMONWEALTH of Pennsylvania,**

v.

**Alvin MILLER, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 5, 1980.

Filed Sept. 18, 1981.

Petition for Allowance of Appeal Denied Jan. 4, 1982.

554

Kevin H. Way, Assistant Public Defender, Williamsport, for appellant.

William S. Kieser, District Attorney, Williamsport, for Commonwealth, appellee.

Before CAVANAUGH, DiSALLE and MONTEMURO, JJ.

DiSALLE, Judge:

Appellant, Alvin Miller, was found guilty in a jury trial of kidnapping, unlawful restraint, false imprisonment, simple assault, terroristic threats, and theft. The jury rejected appellant's contention that he was not guilty by reason of insanity. On April 14, 1980, appellant was sentenced to be imprisoned for a minimum of four years and a maximum of ten years. This appeal follows the denial of his post-trial motions.

Appellant's first contention is that the lower court erred in not declaring a mistrial when the prosecution asked Dr. Brickhouse, a psychiatrist appearing on behalf of appellant,

whether he was aware that appellant had been "found sane in Florida."[1] We disagree.

In reviewing a mistrial motion on appeal we are initially guided by the rule that trial courts are granted discretionary powers, . . . and their rulings "will not be reversed unless there is a flagrant abuse of discretion." . . . In determining whether to grant the request, the necessary inquiry is whether the alleged occurrence was prejudicial to the defendant, "that is, [whether] it is of such a nature . . . that it may reasonably be said to have deprived the defendant of a fair and impartial trial."

(citations omitted). *Commonwealth v. Farrell*, 265 Pa.Super. 41, 52–53, 401 A.2d 790, 796 (1979).

 Here, the offending question, taken in context, and followed, as it was, by the prosecution's clarifying statement to the jury and the lower court's curative instruction to the jury[2] was not so prejudicial as to require a mistrial. The lower court, therefore, did not abuse its discretion in denying appellant's motion. *Id.*

 Appellant's second contention is that the lower court erred in not permitting Dr. Patterson, another psychiatrist appearing on behalf of appellant, to testify as to the probable length of appellant's treatment if he was adjudicated insane and committed to an institution. Appellant argues that such information is a "natural extension" of *Commonwealth v. Mulgrew*, 475 Pa. 271, 380 A.2d 349 (1977).

In *Mulgrew*, our Supreme Court held that a jury must be given an explanation of what would be the consequences of

1. Appellant had testified, prior to Dr. Brickhouse, to having been arrested in Florida and placed in a mental hospital for nine months before being transferred to a Miami prison.

2. These two statements to the jury were:
 "BY MR. OSOKOW [Assistant District Attorney]:
 To clarify that last question, Your Honor, in reference to Florida, I did not mean to imply that there was an adjudication of sanity or insanity at all.
 BY THE COURT:
 All right. The Jury should not infer from the question that there was such a finding down there, as there was not. Now, proceed."

a verdict of not guilty by reason of insanity. The Court adopted as its rationale the language of *Lyles v. United States,* (citation omitted), which held:

"The issue of insanity having been fairly raised, the jury may return one of three verdicts, guilty, not guilty, or not guilty by reason of insanity. Jurors, in common with people in general, are aware of the meanings of verdicts of guilty and not guilty. . . . *But a verdict of not guilty by reason of insanity has no such commonly understood meaning. . . . It means neither freedom nor punishment. It means the accused will be confined in a hospital for the mentally ill until the superintendent of such hospital certifies, and the court is satisfied, that such person has recovered his sanity and will not in the reasonable future be dangerous to himself or others. We think the jury has a right to know the meaning of this possible verdict as accurately as it knows by common knowledge the meaning of the other two possible verdicts.*" (Emphasis added.)

*Mulgrew,* 475 Pa. at 275–76, 380 A.2d at 351.

Here, the lower court instructed the jury that "when a defendant is found not guilty by reason of insanity, he may be the subject of an immediate court proceeding to commit him to a mental treatment facility; and if committed, his commitment will continue as long as there is found a reasonable probability that similar conduct will be repeated." We find this instruction to be in compliance with *Mulgrew.*

We expressly reject appellant's argument that we should expand *Mulgrew.* To permit, as appellant advocates, a defendant to present testimony as to the probable length of his commitment would only serve to cloud the issue of his guilt. The lower court correctly pointed out that, "[t]he length of commitment, be it to a penal institution or a mental institution, is not relevant to any determination in that the jury might properly be called upon to make." *See* III ABA Standards For Criminal Justice § 18–1.1 (2d ed. 1980).

Appellant's third contention is that the lower court erred in denying his motion for bifurcation of the trial. The Act

of July 9, 1976, P.L. 817, No. 143, § 404, effective in 60 days; 50 P.S. § 7404(c) (Supp.1981–82).[3] He argues that the insanity defense made it difficult for the jury to consider the other defenses he raised, thereby denying him a fair and impartial trial. These other defenses consisted solely of appellant's failure to remember or be aware of certain events: placing the rope around the victim's neck, threatening the victim, and stealing the victim's car.

■ The lower court determined that bifurcation was not necessary because the issues were "straightforward enough" and that bifurcation would result in two almost identical trials utilizing the same witnesses and evidence. We agree and hold that the lower court did not abuse its discretion in refusing bifurcation.[4] 50 P.S. § 7404(c). *See* 1 Pa.C.S.A. § 1903 ("words ... shall be construed according to their common and approved usage....").

It is clear that appellant's other defenses were not separate defenses, but were, in fact, rooted in his insanity defense. Therefore, once the jury rejected appellant's insanity defense, they were free to find him guilty of the charges against him based upon the Commonwealth's uncontested evidence.

■ Appellant's final contention is that the lower court erred in not instructing the jury that they should return a verdict of not guilty by reason of insanity if they found that

3. § 7404(c) states:
 Hearing and determination of criminal responsibility; bifurcated trial
 \* \* \* \* \* \*
 (c) Bifurcation of Issues or Trial. Upon trial, the court, in the interest of justice, *may direct* that the issue of criminal responsibility be heard and determined separately from the other issues in the case and, in a trial by jury, that the issue of criminal responsibility be submitted to a separate jury. Upon a request for bifurcation, the court shall consider the substantiality of the defense of lack of responsibility and its effect upon other defenses, and the probability of a fair trial. (emphasis added)

4. Because of our disposition of this issue we will not address the question of appellant's apparent failure to timely file his motion for bifurcation.

appellant's actions were the offspring or product of a mental disorder.[5] Appellant argues that our court should reexamine the presently used *M'Naghten* test[6] for legal insanity in light of recent advancements in psychology.

■ We reject appellant's argument and rely on our Supreme Court's recent reaffirmation of the *M'Naghten* test in *Commonwealth v. Hicks*, 483 Pa. 305, 396 A.2d 1183 (1979). The lower court's charge to the jury was in accordance with the *M'Naghten* test and, therefore, proper.

Judgment of sentence affirmed.

**5.** This definition of legal insanity is that articulated in *Durham v. United States,* 214 F.2d 862 (D.C.Cir.1954).

**6.** The *M'Naghten* test "relieves the actor of criminal responsibility if 'at the time of the committing [of] the act, the party accused was labouring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing, or if he did know it that he did not know he was doing what was wrong.' " (citations omitted). *Commonwealth v. Hicks,* 483 Pa. 305, 310, 396 A.2d 1183, 1185 (1979).