448 A.2d 1123

COMMONWEALTH of Pennsylvania

v.

**Robert D. McCANN, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 9, 1982.

Filed July 30, 1982.

Richard W. Epstein, Sharon, for appellant.

Charles S. Hersh, Assistant District Attorney, Mercer, for the Commonwealth, appellee.

Before BROSKY, CIRILLO and POPOVICH, JJ.

POPOVICH, Judge:

This is a direct appeal from a judgment of sentence of not less than five (5) years nor more than ten (10) years, imposed by the trial court after a jury found the appellant, Robert D. McCann, guilty of aggravated assault (18 Pa.C.S.A. § 2702).

On appeal, appellant contends that, *inter alia*, trial counsel was ineffective for failing to request the court to instruct the jury concerning the consequences of returning a verdict of not guilty by reason of insanity.[1] We agree and, accordingly, vacate the judgment of sentence and remand for a new trial.

As this Court has stated in the past, in deciding a claim of ineffectiveness, we must initially determine whether the issue underlying the charge of ineffectiveness is of arguable merit. *Commonwealth v. Jennings*, 285 Pa.Super. 295, 427 A.2d 231 (1981). Then, if the underlying issue is held to be of arguable merit, we determine whether the

1. In light of our ruling, we need not consider the other allegations of error raised by the appellant.

course taken by counsel had some reasonable basis designed at promoting his client's best interests. *Id.*

In ascertaining if appellant's assertion is of arguable merit, the Court starts by examining the facts. On December 11, 1979, Mrs. Wilma Cooper was walking home when she was accosted in broad daylight. Miraculously, the victim survived the infliction of some 20 stab wounds to all parts of her body. Shortly after the incident, appellant was picked up near the scene by the police complaining of a knife wound to the leg, which he claimed was sustained in the course of aiding a woman being attacked. To prove his point, appellant took the authorities to where Mrs. Cooper was lying in a pool of blood. The police immediately summoned an ambulance for the victim and then transported the appellant to the hospital. While there, the officer in charge of the investigation was handed a note from one of the ambulance attendants. The note gave a description of the assailant, as told to the writer by the victim, which was strikingly similar to the appellant. As a result, the police located the appellant, advised him of his rights and, shortly thereafter, secured a taped confession. Additionally, the victim selected the appellant's photograph out of an array shown to her while she was recuperating in the hospital.

Prior to trial, appellant's counsel raised the defense of insanity. Accordingly, the trial court directed that the appellant be referred to Warren State Hospital for observation. Test results submitted to the court indicated that the appellant was competent to stand trial.

As conceded by appellate counsel in his brief to this Court, "[t]he only real issue in the case was whether the Appellant was sane at the time of the stabbing." As a consequence thereof, the jury heard testimony proffered by. both the defense and the Commonwealth concerning appellant's penchant for violence and sexual perversion. In fact, the sanity issue was broached by the defense through the direct testimony of a Mary Barker, appellant's next door neighbor.

Mrs. Barker recounted how she had observed the appellant engaging in sexual activity with a dog—once in appellant's home and a couple of times in the yard. Next, Dr. Betty Von Benken, a clinical psychologist in the forensic unit at Warren State Hospital, testified to administering a battery of tests to the appellant which measured intellectual, neurological and personality factors. The witness was able to conclude from the tests that appellant, at times, suffered from anxiety so high that it incapacitated him. The witness went on to report that appellant exhibited "obsessive thinking about rape and stabbing; and even though he knew it was wrong, he couldn't seem to control it." (N.T. 203) Also, the witness admitted that this fantasy did not just occur occasionally, "but it was every day[.]" (N.T. 204) However, Dr. Von Benken, despite the number of tests administered, "ha[d] no way of knowing what was in [appellant's] mind[ ]" at the exact moment that he stabbed the victim. (N.T. 217)

Dr. Walter S. Finken, Director of the Forensic Unit of Warren State Hospital, also testified on behalf of the defense. Dr. Finken recounted how the appellant, during their initial interview, admitted to planning the assault ("rape") of Mrs. Cooper; and that, after the appellant dropped out of college and moved in with his grandmother, "[h]e was increasingly plagued with . . . fantasies of rape and murder." (N.T. 236) Such predilection was finally acted out when the appellant assaulted Mrs. Cooper. As the witness opined:

"at the time of the actual thing, I think he [appellant] flipped into some sort of a brief psychotic state overwhelmed by intense emotion, and I think that these horribly destructive rape fantasies, rape murder fantasies he had been having, suddenly for some reason, instead of ending in flight, flipped over into action, and, uh, during this actual time, I think that he was suspended. I don't think he knew anything except the frenzy he was in; and as such, during that actual time, uh, I will postulate that I think that his understanding of right and wrong was

suspended, and I don't think he knew there was such a thing as right and wrong." (N.T. 242–43)

On cross-examination, the witness did not waver from his position that, although appellant was aware of his conduct before and after the incident, during the actual stabbing he was unable to differentiate right from wrong. In other words, appellant had a loss of contact with reality and was not aware of anything. (N.T. 257)

To rebut appellant's insanity defense, the Commonwealth was permitted to present its own psychiatrist, a Dr. Phillip J. Resnick. The witness testified to reviewing all the relevant literature prepared on the appellant and interviewing the accused for about three hours prior to preparing his report. In the course of reciting the content of the report, the witness described the appellant as having a "very close psychological association in his mind between sexual pleasure and the administration of punishment to the victim." (N.T. 272) Additionally, Dr. Resnick agreed with Dr. Von Bender's diagnosis of the appellant as a sexual sadist; however, he did not agree that such disorder was "something which causes someone to be out of touch with reality." (N.T. 275) Quite the contrary, the witness believed that appellant "was in touch with reality, and he knew the consequences of his action." (N.T. 277) Further, the Doctor opined, "in this case even if you hypothesize that Mr. McCann did have a mental illness—which I don't agree with—at the time of the act, it is still my belief that his mental disease did not preclude him from knowing the wrongfulness of the act." (N.T. 278) Nonetheless, it was not Dr. Resnick's intention to minimize the fact that the disorder (sexual sadism) suffered by the appellant "ma[de] him extremely dangerous to society," "and this kind of thing [was] not easily cured by psychiatric treatment, so that [he] fores[aw] [appellant] as being a highly dangerous person for the indefinite future." (N.T. 281) At the conclusion of this witness' testimony, the jury was charged that there were three possible verdicts in the case, i.e., guilty, not guilty or not guilty by reason of insanity.

■ In post-trial motions, counsel assigned various reasons for relief. However, the only averment we need concern ourselves with is whether the court erred in not charging the jury on the possible psychiatric treatment and commitment of the accused if a verdict of not guilty by reason of insanity were returned. Since the court noted that counsel's stewardship was intertwined in the claim made, there having been no specific objection lodged by counsel at the time the charge was read (Pa.R.Crim.P. 1119(b)), it permitted counsel to withdraw and appointed new (private) counsel for the purposes of filing and arguing additional grounds in support of a Motion for a New Trial and/or in Arrest of Judgment.[2] In the supplemental motion filed by new counsel, he asserted that trial counsel was ineffective for failing to request the trial court to instruct the jury concerning the consequences of a verdict of not guilty by reason of insanity, and for trial counsel's failure to take specific objection to same at the conclusion of the charge.

■ Prior to assessing the effectiveness of trial counsel, the threshold question is whether there is arguable merit to appellant's contention that he was entitled to have his counsel request an instruction on the ramifications of the jury returning a verdict of not guilty by reason of insanity. *Commonwealth v. DiVentura*, 270 Pa.Super. 471, 411 A.2d 815 (1979). A perusal of the case law indicates that such question is answered by our Supreme Court's ruling in *Commonwealth v. Mulgrew*, 475 Pa. 271, 380 A.2d 349 (1977).

In *Mulgrew*, a jury returned a verdict of murder of the third degree, carrying a firearm without a license and use of

---

2. We agree with the trial judge that, given the claim made, the prudent course of action was taken by appointing counsel other than from the public defender's office to represent the appellant in post-trial proceedings, inasmuch as trial counsel was employed by said office. *See Commonwealth v. Cooke*, 288 Pa.Super. 205, 208 n. 5, 431 A.2d 360, 362 n. 5 (1981); *see also Commonwealth v. Jennings*, 285 Pa.Super. 295, 298 n. 2, 427 A.2d 231, 232 n. 2 (1981). Accordingly, the issue of trial counsel's ineffectiveness is preserved for review. *Commonwealth v. Terrell*, 276 Pa.Super. 136, 419 A.2d 133 (1980).

a firearm in a crime of violence. On appeal, trial counsel argued that the lower court erred in failing to charge, as he had requested at trial, that the jury be made aware of the consequences of a verdict of not guilty by reason of insanity. In reversing the judgment of sentence and remanding for a new trial, the *Mulgrew* Court embraced the thinking of the Circuit Court of Appeals for the District of Columbia in *Lyles v. United States*, 103 U.S.App.D.C. 22, 25, 254 F.2d 725, 728 (1957), *cert. denied*, 356 U.S. 961, 78 S.Ct. 997, 2 L.Ed.2d 1067 (1958), *cert. denied*, 362 U.S. 943, 80 S.Ct. 809, 4 L.Ed.2d 771 (1962). The following passage was quoted with approval from the Circuit Court of Appeals' decision in *Lyles* :

> "This point arises under the doctrine, well established and sound, that the jury has no concern with the consequences of a verdict, either in the sentence, if any, or the nature or extent of it, or in probation. But we think that doctrine does not apply in the problem before us. The issue of insanity having been fairly raised, the jury may return one of three verdicts, guilty, not guilty, or not guilty by reason of insanity. Jurors, in common with people in general, are aware of the meanings of verdicts of guilty and not guilty. It is common knowledge that a verdict of not guilty means that the prisoner goes free and that a verdict of guilty means that he is subject to such punishment as the court may impose. *But a verdict of not guilty by reason of insanity has no such commonly understood meaning. As a matter of fact its meaning was not made clear in this jurisdiction until Congress enacted the statute of August 9, 1955. It means neither freedom nor punishment. It means the accused will be confined in a hospital for the mentally ill until the superintendent of such hospital certifies, and the court is satisfied, that such person has recovered his sanity and will not in the reasonable future be dangerous to himself or others. We think the jury has a right to know the meaning of this possible verdict as accurately as it knows by common knowledge*

*the meaning of the other two possible verdicts.*" (Emphasis in original)  *Commonwealth v. Mulgrew, supra,* 475 Pa. at 275, 380 A.2d at 351.

Consistent with the aforesaid, we find appellant's contention that he was entitled to have the consequences of acquittal by reason of insanity explained to the jury to be of arguable merit.  To hold otherwise would render ineffectual the statement in *Mulgrew* that such instruction "assist[s] the jury in properly determining the guilt or innocence of a defendant . . . [and] reduce[s] the possibility of compromise verdicts of guilty occasioned by a jury's misapprehension of 'acquitting' a defendant by reason of insanity."  *Id.,* 475 Pa. at 276, 380 A.2d at 352.

Finally, having determined that appellant's claim is of arguable merit, we must now decide if there was some reasonable basis for trial counsel not to have requested such instruction.  *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 604, 235 A.2d 349, 352 (1967).  The lower court, after conducting post-trial proceedings at which "[t]estimony was taken[,]" found as a fact that counsel's decision not to request the instruction was a tactical one.  Such finding was predicated upon the following:

"(8) . . . [trial counsel] reason[ed] that if requested the point would probably be granted, that defendant had already been released from Warren State Hospital, that by the testimony of the psychiatrist of Warren State Hospital, the defendant was a very dangerous person, that the jury should not be informed of the consequences of a verdict of not guilty by reason of insanity due to the ability of such a person to be legally released after a relatively short term from treatment.  In addition, trial counsel was concerned the District Attorney would request and receive an additional charge that defendant could be released in a year.

(9) The defendant's counsel . . . belie[ved] that the Court could not commit the defendant in a mental institution for a period to exceed one (1) year without review.

(10) Defendant's counsel further believed that it was not mandatory that a charge as to the consequences of a verdict of not guilty due to insanity be submitted to a jury under the facts of this case." (Lower Court Opinion at 6)

We cannot agree with the trial court that the reasons just cited are indicative of some reasonable basis for counsel's (in)action. If anything, they cast counsel in a role at odds with that of an advocate acting in his client's best interest. For example, in Point # 8, *supra*, it is conceded that the charge in question would have been given if sought, yet counsel's basis for not requesting same was "the ability of . . . [appellant] to be legally released after a relatively short term from treatment." Such statement, aside from being conclusionary in nature, is not substantiated by any evidence of record. In fact, at trial no one disputed the fact that appellant was a danger to society and would remain that way for a long time. *See* discussion *supra*. Thus, under the strictures of the Mental Health Procedures Act (50 Pa.C.S.A. § 7101 *et seq.* (Supp. 1981–82)), court-ordered involuntary treatment of the appellant, if he were acquitted by reason of insanity (50 Pa.C.S.A. § 7406), would expose him to confinement up to the term of his original sentence for aggravated assault, or longer, if the trial court determined after a yearly review that he still was severely mentally disabled and in need of treatment (50 Pa.C.S.A. § 7304(g)(4)).

As for Point # 10, *supra*, our review of the lengthy trial record convinces us that counsel's trial strategy was not to contest the fact that appellant had stabbed Mrs. Cooper, but, instead, to defend on the basis that appellant was legally insane at the time of the assault. We find no fault with this trial strategy, especially in light of the overwhelming evidence against the appellant. However, *a necessary corollary to such strategy* is the request that an instruction be given on the consequences of the jury returning a verdict of not guilty by reason of insanity. *Cf. Commonwealth v. White*, 490 Pa. 179, 415 A.2d 399 (1980) (in a murder prosecution, an involuntary manslaughter charge shall be given only when

requested, and where the offense has been made an issue in the case and the trial evidence reasonably would support such a verdict); *accord Commonwealth v. Williams*, 490 Pa. 187, 415 A.2d 403 (1980). Such conclusion is inescapable, given the "hold[ing]" in *Mulgrew* "that when insanity is raised as a possible defense to criminal charges, a jury *must be instructed* concerning the possible psychiatric treatment and commitment of the defendant after the return of a verdict of not guilty by reason of insanity." (Footnote omitted) (Emphasis added) *Commonwealth v. Mulgrew, supra,* 475 Pa. at 277, 380 A.2d at 352. *Accord Commonwealth v. Brown*, 494 Pa. 380, 382, 431 A.2d 905, 906 (1981) ("*Mulgrew* unanimously held that 'when insanity is raised as a possible defense to criminal charges, a jury must be instructed concerning the possible psychiatric treatment and commitment of the defendant after the return of a verdict of not guilty by reason of insanity.'" (Citation omitted)); *Commonwealth v. Miller*, 290 Pa.Super. 553, 556, 434 A.2d 1282, 1284 (1981) ("In *Mulgrew*, our Supreme Court held that a jury must be given an explanation of what would be the consequences of a verdict of not guilty by reason of insanity."); *Commonwealth v. Geschwendt*, 271 Pa.Super. 102, 105, 412 A.2d 595, 597 (1979) (CIRILLO, J.) ("*Commonwealth v. Mulgrew* . . . decided that a trial judge should charge as to the consequences of a verdict of not guilty by reason of insanity."); *see also* Anno., 11 A.L.R.3d 737. It is noteworthy that *Mulgrew* created no exceptions to its holding.

Furthermore, in support of our decision we quote the language in *Commonwealth v. Mutina*, 366 Mass. 810, 822, 323 N.E.2d 294, 301–02 (1975) that:

"The instant case represents a classic example of the injustice which may occur when such information is withheld from the jury. The jury could have had no doubt that the defendant [committed the crime]. The jury also heard overwhelmingly persuasive evidence that the defendant was insane at the time of the killing and that, for

a long time into the future, he will remain a menace to himself and to society. Foremost in their minds must have been a concern for the safety of the community.

In the absence of an instruction from the trial judge as to the effect of a verdict of not guilty by reason of insanity, the jurors sought to render justice both to the defendant and to society [by returning a guilty verdict], but theirs was not a true verdict. . . ." (Quoted with approval in *Commonwealth v. Mulgrew, supra,* 475 Pa. at 277, 380 A.2d at 352)

We find the aforesaid to be descriptive of the facts present in the case at bar. Therefore, in the absence of any reasonable basis for counsel's failure to request the instruction at issue here, *see, e.g., Commonwealth v. Bailey,* 480 Pa. 329, 336, 390 A.2d 166, 170 (1978); *Commonwealth v. Sullivan,* 472 Pa. 129, 164, 371 A.2d 468, 484 (1977); *Commonwealth v. Smith,* 273 Pa.Super. 441, 444, 417 A.2d 729, 731 (1979); *Commonwealth v. Ulatoski,* 267 Pa.Super. 521, 524, 407 A.2d 32, 34 (1979), we conclude that appellant is entitled to the relief requested. *Commonwealth v. Mulgrew, supra.* Consequently, we vacate the judgment of sentence and remand for a new trial.

CIRILLO, J., files a dissenting opinion.

CIRILLO, Judge, dissenting:

I respectfully dissent. It is well settled that the particular course of action chosen by counsel must have some reasonable basis designed to effectuate his client's interests. *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 235 A.2d 349 (1967); *see also: Commonwealth v. Roman,* 494 Pa. 440, 431 A.2d 936 (1981); *Commonwealth v. Anderson,* 490 Pa. 225, 415 A.2d 887 (1980).

Trial counsel, admittedly experienced, was aware of the Supreme Court case of *Commonwealth v. Mulgrew,* 475 Pa. 271, 380 A.2d 349 (1977), but chose not to request an instruc-

tion on the ramifications of the jury returning a verdict of not guilty by reason of insanity. Counsel's basis for this position was that the jury could well have been outraged that there was no guarantee that this dangerous criminal would be committed, or that he could be released after a short period of time, and therefore would not consider a verdict of not guilty by reason of insanity.[1]

The test is whether the course chosen by counsel was reasonable, not whether other alternatives were more reasonable upon hindsight evaluation of the record. *Commonwealth v. Hugney*, 491 Pa. 222, 420 A.2d 422 (1980). The tactic employed by trial counsel in this instance had a reasonable basis and certainly was in his client's best interests. Thus, this is not an occasion of ineffective stewardship.

There was nothing inherently unfair or prejudicial about the trial. A new trial, to correct what turned out to be a tactical error by defense counsel, must be paid for by the taxpayers of this Commonwealth, will burden an already crowded judicial calendar, and will further delay the administration of justice in this particular case. The best interest of the parties, of society, and of the law have already been served by the jury trial previously conducted.

Accordingly, the judgment of sentence should be affirmed.

1. Had the court below followed the "Pennsylvania Suggested Standards, Criminal Jury Instructions 5.01(a)," the jury would have been told, *inter alia*, that

[W]hen a defendant is found not guilty as the result of insanity, he *may be* the subject of an immediate court proceeding to commit him to a mental treatment facility and if committed his commitment will continue until he is no longer dangerous to others or to himself. [Emphasis added.]