469 A.2d 126

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Robert D. McCANN, Appellee.**

Supreme Court of Pennsylvania.

Argued Sept. 13, 1983.

Decided Dec. 23, 1983.

Samuel J. Orr, IV, Dist. Atty., Charles S. Hersh, Asst. Dist. Atty., Mercer, for appellant.

Richard W. Epstein, Routman, Moore, Goldstone & Valentino, Sharon, for appellee.

Before ROBERTS, C.J., and NIX, LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

## OPINION

McDERMOTT, Justice.

Robert D. McCann was found guilty of aggravated assault after a jury trial in the Court of Common Pleas of Mercer County. His post trial motions were denied, and a judgment of sentence was imposed of not less than five (5) years nor more than ten (10) years. On appeal, the Superior Court found that McCann's trial attorney was ineffec-

tive, vacated the sentence, and remanded the case for a new trial.[1] The Commonwealth petitioned this Court for allowance of appeal, which was granted. We now reverse the order of the Superior Court and reinstate the judgment of sentence.

The underlying facts of this case are as follows. On December 11, 1979, Mrs. Wilma Cooper was walking home when she was accosted by Robert McCann. As a result of the attack the victim suffered some twenty (20) stab wounds to all parts of her body. Shortly after this incident, McCann was picked up by the police near the scene of the attack. He was complaining of a knife wound to the leg, which he claimed was sustained in the course of aiding a woman who was being attacked. To prove his point, McCann took the police to the site where Mrs. Cooper was lying in a pool of blood. The police, after summoning an ambulance for the victim, transported McCann to the hospital. While there, the officer in charge of the investigation was handed a note from one of the ambulance attendants. The note gave a description of the assailant, as told to the writer by the victim. The description fit Mr. McCann. As a result the police located the accused, advised him of his rights, and shortly thereafter, secured a taped confession. Subsequently the victim selected McCann's photograph out of a photo array.

Prior to trial, appellant's counsel raised the defense of insanity. Consequently, the trial court directed that the appellant be referred to Warren State Hospital for observation. Test results submitted to the court indicated that the appellant was competent to stand trial.

At trial the only issue was whether Robert McCann was sane at the time of the stabbing. The jury heard testimony by both the defense and the Commonwealth concerning McCann's penchant for violence and sexual perversion, and his condition at the time of the attack. Dr. Walter S. Finken, Director of Forensic Unit of Warren State Hospital, testifying for the defense, opined:

1. This decision was reported at *Commonwealth v. McCann*, 302 Pa.Super. 442, 448 A.2d 1123 (1982).

at the time of the actual thing (stabbing), I think he (McCann) flipped into some sort of a brief psychotic state overwhelmed by intense emotion, and I think that these horribly destructive rape fantasies, rape murder fantasies he had been having, suddenly for some reason, instead of ending in flight, flipped over into action, and during this actual time I think that he was suspended. I don't think he knew anything except the frenzy he was in; and as such during that actual time, ... I will postulate that I think that his understanding of right and wrong was suspended, and I don't think he knew there was such a thing as right and wrong.

(N.T. at 242–43.)

To rebut this insanity defense the Commonwealth presented its own psychiatrist, a Dr. Phillip J. Resnick, who had reviewed McCann's records and interviewed the accused for about three (3) hours prior to preparing his report. In testifying from his report Dr. Resnick agreed that the accused was a sexual sadist but he did not agree that such disorder was "something which causes someone to be out of touch with reality" (N.T. at 275); nor did he believe that his putative mental disease precluded him "from knowing the wrongfulness of the act." (N.T. at 278.) However, Dr. Resnick did testify that the disorder (sexual sadism) suffered by the accused "ma[de] him extremely dangerous to society" and he described McCann "as being a highly dangerous person for the indefinite future." (N.T. at 281.)

At the conclusion of Dr. Resnick's testimony, the jury was charged that there were three (3) possible verdicts in the case: guilty, not guilty, or not guilty by reason of insanity. Since McCann's counsel chose not to request a specific charge, the jury was not instructed as to the consequences of a verdict of not guilty by reason of insanity. Thereafter, the jury rejected McCann's insanity defense and found him guilty of aggravated assault.

In post trial motions McCann's counsel raised the issue of whether the court erred in not charging the jury on the possible psychiatric treatment and commitment of the ac-

cused if a verdict of not guilty by reason of insanity was returned. Since trial counsel had neither requested such a charge, nor lodged any objection to the failure of the court to include such a charge as required by Pa.R.Crim.Pro. 1119(b), the post-trial court correctly noted that counsel's effectiveness was called into question. The court, therefore, permitted trial counsel to withdraw, and appointed new counsel for the purpose of filing and arguing additional grounds in support of a Motion for New Trial and/or in Arrest of Judgment. In a supplemental motion by new counsel, he asserted that trial counsel was ineffective for failing to request the trial court to instruct the jury concerning the consequences of a verdict of not guilty by reason of insanity; and for trial counsel's failure to take specific objection to same at the conclusion of the charge. These motions were denied on May 18, 1981, and from this decision McCann appealed.

On appeal the Superior Court, relying upon our decision in *Commonwealth v. Mulgrew*, 475 Pa. 271, 380 A.2d 349 (1977), found first that McCann's claim had merit (i.e., that he was entitled to the charge), and held that there was no reasonable basis for defense counsel's failure to request such a charge.

In *Commonwealth v. Mulgrew, Id.*, we held that a defendant who raises the defense of insanity is entitled to a jury instruction on the consequences of a verdict of not guilty by reason of insanity. The defendant here has argued that *Mulgrew* requires such an instruction in all cases regardless of whether or not requested, and in the alternative that the failure to request such a charge is per se ineffective. The Superior Court did not explicitly state that *Mulgrew* announced a per se rule,[2] yet they seemed to have considered it as such. However, as noted above the basis of their decision was the conclusion that no reasonable basis existed for the failure of McCann's attorney to request the charge.

**2.** The Court in ruling on McCann's claim wrote: "we find appellant's contention that he was entitled to have the consequences of acquittal by reason of insanity explained to the jury *to be of arguable merit.*"

The holding in *Mulgrew*, as in all cases, must be read in the context of its facts. In that case, defense counsel specifically requested a charge on the consequences of a verdict of not guilty by reason of insanity. The trial judge denied that request, and on appeal it was this denial which was under scrutiny. Although there is broad language in the holding of *Mulgrew*, i.e., "a jury must be instructed concerning the possible psychiatric treatment and commitment of the defendant after the return of a verdict of not guilty by reason of insanity." *Id.*, 475 Pa. at 278, 380 A.2d at 352; implicit therein is the condition that *upon request* such an instruction must be given. As noted by the learned trial judge this interpretation is consistent with that applied in a number of other jurisdictions. *See Kinsman v. State*, 512 P.2d 901 (Alaska 1973); *People v. Beasley*, 43 Colo.App. 488, 608 P.2d 835 (1979); *People v. Cole*, 382 Mich. 695, 172 N.W.2d 354 (1969); *People v. Crawford*, 89 Mich.App. 30, 279 N.W.2d 560 (1979); *State v. Carignan*, Minn., 271 N.W.2d 442 (1978); *State v. Hammonds*, 290 N.C. 1, 224 S.E.2d 595 (1976); *State v. Daggett*, W.Va., 280 S.E.2d 545 (1981). Also, this interpretation is not inconsistent with those cases relied upon by this Court in *Mulgrew. See Commonwealth v. Mutina*, 366 Mass. 810, 323 N.E.2d 294 (1975); ([W]e hold that in all trials ... where the defense of insanity is fairly raised, the defendant, *on his timely request*, is entitled to an instruction in the consequences of a verdict of not guilty by reason of insanity (emphasis added). *Id.* at 823 n. 12, 323 N.E.2d 302, n. 12.); and *Lyles v. United States*, 103 U.S.App.D.C. 22, 254 F.2d 725 (1957) (defendant may affirmatively state on the record that he does not want an instruction on the consequences of an insanity verdict. *Id.* at 25, 254 F.2d 728.)

■ *Mulgrew* was not intended to announce a per se rule requiring in all cases, regardless of whether or not requested, an instruction on the consequences of not guilty by reason of insanity verdict. Consequently, we find no error

(Emphasis added.) *Commonwealth v. McCann, supra,* 302 Pa.Super. at 449, 448 A.2d at 1127.

in the trial judge not having sua sponte given the charge in question.

Thus, our inquiry is limited to the question of whether there was a reasonable basis for trial counsel's failure to request this instruction and/or failure to object to the charge given by the trial court. *See Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967). Regarding this issue the trial court, after conducting post trial proceedings at which McCann's trial counsel testified, made the following findings of fact:

(1) Attorney Michael Wherry (trial counsel) is an Assistant Public Defender of Mercer County who has practiced law for 19 years and whose practice is in large measure devoted to criminal trials.

(2) That Attorney Wherry has tried over 200 cases before juries and has handled between 2500 and 5000 criminal cases. He has participated as the primarily responsible counsel in over 90 homicide cases.

. . . .

(6) At the time of the charge defendant's counsel had in front of him Volume 2, Criminal Trial Manual, Page 255, which contained a summary of *Commonwealth v. Mulgrew, supra*. Counsel was intimately knowledgeable as to the holding of that case.

. . . .

(7) Defendant's counsel made a tactical choice not to present for binding instruction to the Court or to request the Court to charge upon the consequences of a verdict by reason of insanity.

(8) Defendant's counsel tactical decision was based on the reasoning that if requested the point would probably be granted, that defendant had already been released from Warren State Hospital, that by the testimony of the psychiatrist of Warren State Hospital the defendant was a dangerous person, that the jury should not be informed of the consequences of a verdict of not guilty by reason of insanity due to the ability of such a person to be legally released after a relatively short term from treat-

ment. In addition, trial counsel was concerned the District Attorney would request and receive an additional charge that defendant could be released in a year.

. . . .

(10) Defendant's counsel further believed that it was not mandatory that a charge as to the insanity be submitted to a jury under the facts of this case.

Slip op. Acker, J. No. 528 Crim 1979 at 5–6.

The trial court accepted counsel's "tactical decision" and held that this decision was reasonably calculated to benefit the defendant. In deciding this issue the trial judge noted that the decision of whether to request such an instruction is a matter of some debate, citing 11 A.L.R. 737, Anno: "Instructions in Criminal Case in Which Defendant Pleads Insanity as to Hospital Confinement in the Event of Acquittal." Slip op. *supra.* at 12. The Superior Court disagreed.

■ For the following reasons we find that the Superior Court erred when it reversed the trial court. First, defense counsel was correct in concluding that commitment was not mandatory following a finding of not guilty by reason of insanity. After *Commonwealth ex rel. DiEmilio v. Shovlin,* 449 Pa. 177, 295 A.2d 320 (1972) it is clear that the decision to commit a defendant found not guilty by reason of insanity, must be the subject of a separate proceeding. *See* Section 406 of Mental Health Procedures Act,[3] 50 P.S. § 7406.[4] Thus, it was proper for trial counsel to conclude that commitment was only a possibility, and not a mandatory concomitant of a finding of not guilty by reason of insanity.

More importantly, we find as reasonable trial counsel's decision not to ask for the instruction, in light of the opportunity it would have presented the prosecutor to ar-

3. Act of July 9, 1976 P.L. 817, No. 143 § 101, 50 P.S. § 7101 *et seq.*

4. We note that Section 501A(6) of the Pennsylvania Suggested Standard Criminal Jury Instructions provides:
   ... when a defendant is found not guilty as a result of insanity, he *may be* the subject of an immediate court proceeding to commit him to a mental treatment facility.... (emphasis added.)

gue to the jury that the procedures provided in the Mental Health Procedures Act would permit the defendant to be released within a relatively short period of time.[5]

■ Therefore, we conclude that the refusal to request a charge on the consequences of an insanity verdict and/or the refusal to object to the trial judge's charge, was a reasonable tactical decision designed to effectuate the defendant's best interests. As such we reverse the order of the Superior Court, and remand this case to that court for the resolution of those issues which were not previously addressed.[6]

ROBERTS, C.J., files a dissenting opinion.

ROBERTS, Chief Justice, dissenting.

I dissent. On the facts of this case, counsel could have had no reasonable basis for failing to request a charge on the consequences of a verdict of not guilty by reason of insanity. From the post-trial judge's specific findings on counsel's strategy, it is manifestly apparent that appellee's trial counsel engaged in a course of action that was both contradictory and defeatist and that could in no way have served the best interests of his client.

5. Since *Mulgrew, supra,* we have not expressly defined the extent to which a prosecutor may argue the possible length of commitment of a defendant found not guilty by reason of insanity. However, other jurisdictions which have addressed this problem have allowed prosecutor to at least explain the procedures by which a defendant would be evaluated. *See State v. Karstetter,* 110 Ariz. 539, 521 P.2d 626 (1974); *People v. Fox,* 131 Ill.App.2d 604, 264 N.E.2d 502 (1970); *People v. Blake,* 58 Mich.App. 685, 228 N.W.2d 519 (1975); *People v. Reade,* 1 N.Y.2d 459, 154 N.Y.S.2d 27, 136 N.E.2d 497 (1956). *See also, Commonwealth v. Killelea,* 370 Mass. 638, 351 N.E.2d 509 (1976). Thus, it was reasonable for trial counsel in this case to conclude that the Commonwealth would have been entitled to at least an instruction on this issue, if not an opportunity to argue the point.

6. In addition to the above issue, the Commonwealth has challenged the continued use of the *M'Naghten* Rule in Pennsylvania. In *Commonwealth v. Oblek,* 496 Pa. 519, 437 A.2d 1162 (1981) we stated that "[w]e have repeatedly declined requests to abrogate [this] rule and once again [we] decline." (Citation omitted.) *Id.,* 496 Pa. at 521, 437 A.2d at 1162. We see no reason in this case to depart from that holding.

As the majority notes, the only issue at trial was appellee's sanity at the time he attacked the victim. Thus, the only verdict logically available to the jury aside from guilty was that of not guilty by reason of insanity. Having chosen to defend at trial solely on the basis of appellee's insanity, appellee's counsel had presented a chilling picture of appellee's history of mental disturbance and bizarre acts of sexual sadism. This picture was supplemented by the Commonwealth's own psychiatric expert, who, although disputing appellee's legal insanity at the time of the offense, testified that appellee's disorder "ma[de] him extremely dangerous to society" and "a highly dangerous person for the indefinite future."

As the trial court noted, if appellee's counsel had requested an instruction on the consequences of a verdict of not guilty by reason of insanity, the instruction given would likely have been that prescribed by the Pennsylvania Suggested Standard Criminal Jury Instructions, § 5.01A, which appears in substantially abridged form at footnote 6 of the majority's opinion. That instruction provides, in relevant part: "[W]hen a defendant is found not guilty by reason of insanity, he may be the subject of an immediate court proceeding to commit him to a mental treatment facility *and if committed his commitment will continue until he is no longer dangerous to others or to himself.*" (emphasis supplied)

Nonetheless, in the face of undisputed testimony concerning the danger presented by appellee and the existence of a standard jury charge stating that commitment would last until appellee was "no longer dangerous to others," counsel chose not to request such an instruction. According to the findings of the post-trial court,

"(8) Defendant's counsel's tactical decision was based on the reasoning that if requested the point would probably be granted, that defendant had already been released from Warren State Hospital, that by the testimony of the psychiatrist of Warren State Hospital the defendant was a very dangerous person, that the jury should not be informed of the consequences of a verdict of not guilty by

reason of insanity due to the ability of such a person to be legally released after a relatively short term from treatment. In addition, trial counsel was concerned the District Attorney would request and receive an additional charge that defendant could be released in a year.

(9) The defendant's counsel was of the belief that the Court could not commit the defendant in a mental institution for a period to exceed one (1) year without review."

The majority endorses counsel's "tactical decision" because "defense counsel was correct in concluding that commitment was not mandatory following a finding of not guilty by reason of insanity," and, "[m]ore importantly, we find as reasonable trial counsel's decision not to ask for the instruction in light of the opportunity it would have presented the prosecutor to argue to the jury that the procedures provided in the Mental Health Procedures Act would permit the defendant to be released within a relatively short period of time." (at 129–130; footnote omitted).

From these findings and conclusions, it should be obvious that both trial counsel's strategy and the majority's approval of it are based upon a purely theoretical analysis utterly removed from the facts of *this* case, focusing myopically on the abstract fact that commitment is, by statute, discretionary and subject to review, and ignoring the absolute inevitability of appellee's commitment on this record. Following a full and fair jury charge on the consequences of a verdict of not guilty by reason of insanity, could any juror, after hearing the testimony of both prosecution and defense experts concerning appellee's history of dangerous mental illness, have reasonably believed that the Commonwealth would abandon its duty to its citizens and fail to seek appellee's immediate commitment following such a verdict? Would the prosecution even dare to argue such a possibility? Could any juror, having been presented with a vivid picture of appellee's violent behavior and poor prognosis, have rationally believed that appellee would not in fact be promptly committed to a mental institution? Could any juror, having heard the Commonwealth's expert state that appellee was a "highly dangerous person for the indefinite

future," have reasonably believed that appellee would be released in a year, or even several years, simply because of the existence of a yearly review procedure? Yet, instead of relying on his own skills as an advocate, the impartiality of the trial judge, and the jury's common sense, trial counsel chose to leave the jury to reach its own speculative conclusion as to the consequences of the only verdict it could possibly render aside from guilty. See *Commonwealth v. Mulgrew*, 475 Pa. 271, 276, 380 A.2d 349, 352 (1977) (instruction "reduce[s] the possibility of compromise verdicts of guilty occasioned by a jury's misapprehension of 'acquitting' a defendant by reason of insanity").

The issue in this case is not whether a jury charge on the consequences of a verdict of not guilty by reason of insanity must always be given, or whether situations may exist where the failure to request such a charge could constitute sound trial strategy. Rather, the issue is simply whether, on the facts of *this* case, appellee's counsel was ineffective for failing to request a jury instruction that a verdict of not guilty by reason of insanity could result in the commitment of his undisputedly disturbed and dangerous client to a mental institution until he was "no longer dangerous to others or to himself." Manifestly, the order of the Superior Court remanding this case for a new trial should be affirmed.